## Brovdy et al. *v.* Jones & Laughlin Steel Corporation, Appellant.

Argued April 18, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*William A. Challener, Jr.,* with him *Frank McC. Painter* and *William A. Challener,* for appellant.

*Julius J. Strba,* for appellees.

OPINION BY RHODES, J., July 18, 1941:

This is an appeal by defendant from a judgment entered on an award of compensation under section 307 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as reenacted, amended, or further amended by the Act of June 4, 1937, P. L. 1552, 77 PS §§561, 562. The compensation authorities found that George Balego, the deceased employee, stood in loco parentis to certain minor children of his sister, Mary Brovdy, and that they were members of his household at the time of his death. On appeal to the court of common pleas the material exceptions were dismissed, and judgment entered on the award.

George Balego died on April 27, 1938, as the result of an injury by an accident in the course of his employment. George Brovdy, the husband of Mary Brovdy and the father of the minor children, died on July 17, 1937. After Brovdy's death Balego moved to his sister's home. At that time the family consisted of herself and six children, John Brovdy, 22 years of age; George Brovdy, Jr., 20 years of age; Anna Brovdy, 18 years of age; Helen Brovdy, 13 years of age; Andrew Brovdy, 11 years of age; and Michael Brovdy, 7 years of age. George Balego continued to live with the family until his death nine months later.

The referee's seventh finding of fact, approved by the board, is as follows:

"Seventh: Your Referee finds as a fact that the children of Mary Brovdy, viz., Helen Brovdy, born November 13, 1923; Andrew Brovdy, born September 25, 1926, and Michael Brovdy, born December 21, 1930, to whom the deceased stood in loco parentis, were members of deceased's household and partially dependent upon him for their maintenance and support at the time of his death and for some time prior thereto."

Section 307 in the Act of 1937, 77 PS §561, provides: "In case of death, compensation shall be computed on the following basis, and distributed to the following persons: 1. If there be no widow nor widower entitled to compensation, compensation shall be paid to the guardian of the child or children, or, if there be no guardian to such other persons as may be designated by the board as hereinafter provided, as follows: (a) If there be either one or two children, thirty per centum of wages of deceased, but not in excess of twelve dollars per week. (b) If there be three children, forty-five per centum of wages of deceased, but not in excess of fourteen dollars per week." Section 307, 77 PS §562, also contains the following provision: "The terms 'child' and 'children' shall include stepchildren and adopted children and children to whom he stood in loco parentis, if members of decedent's household at the time of his death, and shall include posthumous children."

To sustain the award of compensation there must have been proof of two coexisting conditions: (a) That the deceased employee stood in loco parentis to the children of his sister; and (b) that such children were members of deceased's household at the time of his death. See *Smrekar et al. v. Jones & Laughlin Steel Corp.*, 137 Pa. Superior Ct. 183, 188, 8 A. 2d 461. In *Robinson's Estate*, 35 Pa. Superior Ct. 192, 195, and again in *Renovich v. Bethlehem Mines Corp.*, 131 Pa.

Superior Ct. 351, 354, 200 A. 122, we said that a person in loco parentis to a child is one "who means to put himself in the situation of a lawful father of the child, with reference to the father's office and duty of making provision for the child." Although we seriously question that the testimony was sufficient to sustain a finding that deceased occupied this relation to the three minor children of his sister, it is not necessary for us to decide as to the sufficiency or insufficiency of the testimony to sustain the findings of the compensation authorities in this respect in disposing of this appeal. Any brother who went to live with his sister should have displayed the same characteristics toward her children, if actuated by a reasonable degree of affection, as deceased displayed toward his nephews and nieces. But even if deceased intended to assume the parental relation and the consequent obligations, it must have been established that the children were members of his household at the time of his death. The record is lacking in proof to support such a finding. As a matter of fact, we think it contains positive evidence to the contrary.

A household means a domestic establishment under a single head or management. *Hoff et al. v. Hoff et al.*, 132 Pa. Superior Ct. 431, 435, 1 A. 2d 506. The words "family" and "household" are often interchangeably used, and it has been said (*Bair v. Robinson*, 108 Pa. 247, 249) that all persons who dwell together under a common head as a household are embraced by the word "family." The term "household," however, is generally recognized as somewhat broader in its implication than the term "family."

There is no dispute that after Mary Brovdy's husband died deceased came to live with her and her family, and resided there until his death on April 27, 1938, a period of about nine months. The testimony clearly reveals that Mary Brovdy was the head of the household in which deceased came to live, and that the domestic

establishment in which he thereafter resided remained under her sole management. Her own testimony establishes this fact. Although deceased gave his pay envelope each pay day to his sister, the amount which he contributed represented only a portion of Mrs. Brovdy's income. She also received the earnings of several of her children who were employed. She continued to pay the rent and all the household expenses, such as the store bill, electric light bill, etc., and to purchase all the clothes for the children. It was her home, as it had been previously, and she conducted it as such. Deceased's contributions to her did not exceed those of a boarder. In 1937 his earnings after moving to his sister's home amounted to $418.86, or about one-tenth of her total income for that year, part of which was the proceeds of insurance policies. In 1938 his earnings up to the time of his death amounted to $110.39, or about $6.50 per week. Deceased's contributions during the entire period would barely cover his own living expenses; a negligible amount, if any, could have been left. During this same period some of the Brovdy children were employed, and their earnings during the nine months deceased lived with his sister and her family, which earnings Mrs. Brovdy testified were given to her, were almost three times the earnings of deceased. From the testimony it appears that when deceased turned over his pay to his sister he no longer had any control over it. She used it as she saw fit, and in the event that he needed money for his personal expenses he was obliged to secure it from her. In financial matters he had the same status as the children. She remained the manager of her own home. In this connection she testified as follows: "Q. When George gave you all of his pay, how much did you give him back then for cigarettes, drink now and then and shows, etc.? A. When he's come in my house nine months, when he's coming need to buy clothes, when he needs spending

money, I give it to him. Q. How much did you give him? A. I give it to him two or three dollars when he ask me. Q. That would be every week, or payday? A. Every time he need money, I give him money. He knows we don't got nothing."

There is no substantial proof that the three minor children of Mrs. Brovdy were dependent upon deceased, or that they ever were supported to any tangible degree by him, or that he in any manner obligated himself to maintain them. And when we come to one of the essential elements in the case, we find that the record contradicts claimants' contentions, and discloses that Mary Brovdy was head of the household of which deceased was a member, and as such exercised control of the household affairs.

The court below in its opinion sustaining the award attaches much importance to the fact that deceased had purchased a vacant lot in the vicinity of Pittsburgh, and apparently contemplated the erection thereon of a house. Mrs. Brovdy eventually acquired title to this lot. We are unable to see any significance in this transaction, or that it has any bearing upon the conduct of the household in which deceased resided and his status therein. It affords no possible inference that the three minor children of Mrs. Brovdy were members of a household of which deceased was the head.

Claimants cite, and to some extent rely upon, *Mayfield v. Kerr,* 102 Pa. Superior Ct. 532, 157 A. 506. In that case an award in favor of six minor children was sustained. They and their mother having been deserted by their father came to live with their grandmother and their uncle— their mother's brother— and were supported and maintained by the latter until his death in the course of his employment. It was found that the deceased employee stood in loco parentis to the children, and that deceased furnished the principal support, and assumed the responsibilities of a parent.

We need only to point out the clear differences. In the Mayfield case deceased was the principal support of the minor children, and assumed the responsibilities of a parent. In the instant case deceased was not the principal support of his sister's three children, and only contributed to his sister for the household expenses as a member of her household. In the Mayfield case the children and deceased's sister went to live with him, while in the present case just the opposite occurred.

In *Dime Trust & Safe Deposit Co. v. Philadelphia & Reading Coal & Iron Co.*, 78 Pa. Superior Ct. 124, the minor claimant was a member of the household of her deceased grandfather at the time of his death, and dependent upon him for support. The grandfather had raised claimant from infancy, and at the time of his death he stood in loco parentis to her.

In *Renovich v. Bethlehem Mines Corp.*, supra, it was found that the grandsons of deceased were living with him, and entirely dependent upon him for support, and that he stood in loco parentis to his grandchildren. On such facts an award was sustained.

We are of the opinion that the testimony supports no other conclusion than that Mrs. Brovdy was the head of the household, and had the exclusive management thereof, and that deceased was merely a member of his sister's family, and contributed to the expenses as such, rather than the head of a household in which the minor children of his sister were members at the time of his death. In the absence of evidence to sustain the finding that the three children of Mary Brovdy were members of deceased's household, the judgment must be reversed.

Judgment is reversed.