## Flinn *v.* Sonman Shaft Coal Company, Appellant.

Argued April 19, 1943. Before KELLER, P. J., BALDRIGD, STADTFELD, RHODES, KENWORTHEY and RENO, JJ. (HIRT, J., absent)

*Francis A. Dunn,* for appellant.

*George Jerko* with him *Llewellyn E. Lloyd,* for appellee.

OPINION BY KENWORTHEY, J., July 16, 1943:

The Workmen's Compensation Board found that at the time of his death William Flinn stood in loco parentis to his seven minor brothers and sisters and that they were members of his household. The common pleas court affirmed the award based on this finding; the employer appeals.

The basic facts are virtually undisputed. At the time of Flinn's death, on July 15, 1940, he was thirty-one years old, unmarried, and the oldest of eleven children. Prior to his father's death in 1935, he worked away from home but had contributed to the family's support by allowing his mother to obtain groceries on his credit. After his father's death, he came home, worked temporarily for the W.P.A., and finally obtained employment in defendant's mines. At the time of his father's death, the youngest of the minor children involved was nine months old, the oldest was nine years and two months old.

In 1937, he purchased, in his own name, the home in which the family had lived for some fifteen years. He repaired and refurnished it, paid the taxes, and all of the bills, bought clothing for the whole family and gave his mother money for food. Until December 1939, he was the sole support of the family although one brother was engaged for a short time in a National Youth Administration project.

In December 1939, two of the brothers (aged twenty-

two and twenty at the time of the hearing in December 1940) obtained employment. They turned over all their earnings to the mother who gave a portion of them to decedent to be used for household expenses. The mother and decedent, together, disbursed the family funds. The combined earnings of these brothers just about equalled the earnings of decedent. The evidence indicated that decedent devoted his entire earnings of about $22 per week to the support of the family, that he paid directly many of the household bills, and he indicated to his mother that he would "look after us and take care of us," meaning "the family, after me and the family."

As we recently pointed out in *Brovdy et al. v. J. L. Steel Corp.*, 145 Pa. Superior Ct. 602, 21 A. (2d) 437, to sustain the award it must appear both that decedent stood in loco parentis to the brothers and sisters and that they were members of his household at the time of his death.

We said in the *Brovdy* case it is not sufficient to show merely that decedent was a member of the same household or family as the children-claimants; it is necessary to show that the household was his. We think the evidence that decedent bought the home and owned it in his name, that he repaired and furnished it and that he devoted his entire earnings to its maintenance adequately supports the finding that it was. He exercised much greater control over it than the grandfather in *Renovich v. Bethlehem Mines Corp.*, 131 Pa. Superior Ct. 351, 200 A. 122, where we held the evidence was sufficient to support a similar finding.

The case is easily distinguished from the *Brovdy* case. There decedent, nine months before his death, moved into the home of his sister who was a widow with six children, three of whom were over eighteen years of age, and three under. The income which he contributed to the support of the household was but a

small portion of his sister's total income, the rest of it being derived from contributions by the older children; in fact, decedent's contributions were no more than just about those of a boarder. The sister continued to be the head of the household, to exercise complete control over the household affairs and she paid the rent and all of the household expenses. We think the present case is more nearly analogous to *Mayfield v. Kerr*, 102 Pa. Superior Ct. 532, 157 A. 506.

"The accepted definition of one 'in loco parentis' is, 'one who means to put himself in the situation of a lawful father to the child, *with reference to the office and duty of making provision for the child'*: Robinson's Est , 35 Pa. Superior Ct. 192, 195; 31 C. J. 358, note 77 [a] ; or 'A person assuming the parental character, or discharging parental duties'; Wetherby v. Dixon, 19 Ves. Jr. 407, 412; Vonder Horst v. Vonder Horst, 88 Md. 127, 41 A. 124." *Renovich v. Bethlehem Mines Corp.*, supra, at 354. Although it may be somewhat unique for a son to rejoin his family after his father's death and, by the assumption of the responsibilities, to replace his father as the legal parent of his younger brothers and sisters during the life of the mother, it is by no means impossible and each case must depend upon its own facts.

The fact-finding function is that of the compensation authorities. We think the evidence supports all of their findings.

The appeal is dismissed and the record returned to the lower court with direction to enter judgment on the award.