BOSTON-EDISON PROTECTIVE ASSOCIATION *v.* THE
PAULIST FATHERS, INC.

1. Covenants—Single Dwelling House—Family.
   Covenant restricting use and occupancy of city lot to single
   dwelling house and dwelling house purposes only does not rea-
   sonably require that the dwelling may be used only by those
   who are members of a single family related within the degrees
   of consanguinity or affinity.

2. Same—Construction.
   A covenant restricting the use or occupancy of land must be
   given a construction within reason, and not beyond reason.

3. Easements—Construction of Reciprocal Negative Easement.
   The construction of a reciprocal negative easement is dependent
   upon the facts of the case in which the construction is sought
   as it is neither possible nor desirable to establish a measuring
   stick and thereafter cut cases to fit.

4. Covenants—Building Restrictions—Construction.
   Building restrictions upon lots in a subdivision constitute re-
   ciprocal negative easements and as a general rule are construed
   against the grantor and those who claim under him.

5. Same—Construction of Restrictions.
   Generally restrictions on the use of property will be construed
   strictly against those claiming to enforce them and all doubts
   resolved in favor of the free use of the property.

6. Words and Phrases—Family.
   The word ''family'' is one of great flexibility and is appli-
   cable to husband and wife with or without children, wife and
   children, children, blood relatives, any group constituting a
   distinct domestic or social body, a small select corps attached
   to an army chief or even a whole religious sect.

7. COVENANTS—SINGLE DWELLING RESTRICTION—OCCUPANCY BY
    PRIESTS.
    Covenant in deed of city lot restricting use or occupancy to
    single dwelling house and dwelling house purposes only does
    not prevent use and occupancy of house by five priests and
    their two servants solely for private residence purposes and
    their private religious devotions.

8. INJUNCTION—JURISDICTION TO REOPEN CASE.
    In suit to enjoin violation of single residence restriction on the
    use of a city lot, where injunctive relief is denied, jurisdiction
    to reopen the case upon a fair showing that a substantial
    change had been made in the use of the premises was properly
    retained.

Appeal from Wayne; Miller (Guy A.), J. Sub-
mitted June 8, 1943. (Docket No. 8, Calendar No.
42,258.) Decided September 7, 1943.

Bill by Boston-Edison Protective Association, a
Michigan corporation, and others against the Paul-
ist Fathers, Inc., and another to restrain use of
house alleged to be in violation of residential build-
ing restriction. Decree for defendants. Plaintiffs
appeal. Affirmed.

*Bishop & Bishop*, for plaintiffs.

*Monaghan, Clark, Kellogg & McGuirk* (*Peter J.
Monaghan, Jr.*, of counsel), for defendants.

BOYLES, C. J. The issues in this case, as stated by
appellants, are as follows:

"1. Is the property of defendants' being used by
them in such a manner as to violate the residential
building restrictions in the subdivision?
"2. Are plaintiffs entitled to injunctive relief
with respect to the said use of defendants' prop-
erty?"

The plaintiff Boston-Edison Protective Associa-
tion is a Michigan nonprofit corporation organized

to enforce the residential building restrictions on four consecutive and parallel streets in the city of Detroit, known as Boston boulevard, Chicago boulevard, Longfellow avenue and Edison avenue, between Hamilton avenue on the east and Linwood avenue on the west. Some of the individual plaintiffs are owners and occupants of residences in this district. The lower court dismissed the bill of complaint as to those plaintiffs (including the association) who were not owners, but found a sufficient number of owner-plaintiffs to support jurisdiction. No question of jurisdiction is now raised.

Defendant The Paulist Fathers, Inc., is a Michigan corporation that holds the record title to a residence within the restricted area. Defendant Father G. B. Robert is a Roman Catholic priest who originally negotiated the purchase of the property, arranged for the repairs to put the house in condition for residence, and now has full charge and control of its use. The building has six bedrooms, four bathrooms, with five small rooms and one bath in a servants' wing. It is occupied by five priests and their two servants, and in its present condition will not be occupied by more than six priests because of bedroom limitations. No business of a commercial nature is carried on, no religious services, there is no invitation to the public to enter, no lectures or missions, the building is used solely for private residence purposes by the five priests, and their private religious devotions. The business activities of The Paulist Fathers, Inc., is conducted from an office in the Chancellery building on Washington boulevard, not in the restricted area.

This restricted district is built up with residences of extremely high character and considerable value, is a very fine residential district, restricted to the erection or occupancy of buildings for residence

purposes only, and the restrictive covenants have been carefully guarded and enforced by the property owners. Plaintiffs disavow any objection to the individual members of The Paulist Fathers, Inc., who reside on these premises, no objection is made to the occupancy on account of commercialism, or to The Paulist Fathers' order as such. Counsel for plaintiffs states:

"The plaintiffs object to the use of the premises by a group of persons not related to each other by blood or marriage as in the case of a family and contend that such a use of the premises is a violation of the restriction, which will inevitably lead to more violations."

The Paulist Fathers, Inc., acquired title of these premises subject to certain building and use restrictions. So far as pertinent to this case, the restriction governing the use of defendants' property appears in the record chain of title as follows:

"The said party of the second part (she) shall not use or occupy said lots except for a single dwelling house and dwelling house purposes only."

Narrowed down, plaintiffs' claim seems to be that this restriction as to use limits the occupancy of the residence to persons of one (and the same) family, *i. e.,* persons related to each other by blood or marriage. We do not so construe the restriction as to use. In its narrowest sense, this would prevent the owner of property thus restricted from having a servant reside on the premises unless the servant was related to the other occupants by blood or marriage. In the recent years, many "families" have taken into the home a refugee from foreign lands, which could not be done, under a literal construction of plaintiffs' claim, if the humanitarian family happened to occupy a residence in a district restricted

to "one-family" dwellings. Unless related, a child could not be taken into the "family," to be cared for, unless perhaps by adoption. The point is, the restriction must be given a construction within reason, and not beyond reason. We conclude that it would not be reasonable to declare the rule to be that a restriction limiting the use of premises to a one-family dwelling means that the dwelling may be used only by those who are members of a single family related within the degrees of consanguinity or affinity.

Plaintiffs rely on language found in the opinion of this court in *Nerrerter* v. *Little,* 258 Mich. 462, as follows:

"A restriction limiting the construction of a building on premises to a dwelling house means a building designed as a single dwelling to be used by one family. *Harris* v. *Roraback,* 137 Mich. 292 (109 Am. St. Rep. 681) ; *Bagnall* v. *Young,* 151 Mich. 69 ; *Schadt* v. *Brill,* 173 Mich. 647 (45 L. R. A. [N. S.] 726)."

Plaintiffs construe "one family" as thus used, too literally. The facts in that case do not aid plaintiffs' construction. The defendant in that case was conducting a place for boarding and rooming a considerable number of small children, in a district restricted to the construction of a one-family dwelling house. It was held this could not be done. The cases cited in the *Nerrerter Case* do not support plaintiffs' construction that "one family" excludes occupancy by anyone except a member of the family. *Harris* v. *Roraback,* 137 Mich. 292 (109 Am. St. Rep. 681), there cited, merely holds that a two-story dwelling designed for occupancy by two families, one on each story, with separate entrances, was not permissible under a restriction limiting occupancy

to one dwelling house. In *Bagnall* v. *Young,* 151 Mich. 69, it was merely held that a restriction in a deed against building anything on the premises but "a two-story dwelling house" prevents the grantee from erecting a two-story double dwelling house to be occupied by two families. In *Schadt* v. *Brill,* 173 Mich. 647 (45 L. R. A. [N. S.] 726), a restrictive negative easement provided that no building other than a dwelling house could be erected on the lot, and it was held that this prevented the owner from erecting a double house intended for use by two families.

However, any reasonable construction of restrictive negative easements does not permit such liberality as to allow the use of the dwelling as a rooming house (*Dingeman* v. *Boerth's Estate,* 239 Mich. 234), nor the use of a part of the dwelling as a store (*Holderness* v. *Central States Finance Corp.,* 241 Mich. 604), nor its use as a college fraternity house to accommodate 30 or more members as a boarding and rooming house (*Seeley* v. *Phi Sigma Delta House Corp.,* 245 Mich. 252), nor its use in carrying on the business of boarding and caring for young children (*Nerrerter* v. *Little, supra*). It is obvious that each case involving the construction of reciprocal negative easements must be decided on its merits, considering the facts of the case. As said by Mr. Justice Wiest in *Hamburger* v. *Kramp,* 268 Mich. 611:

"Building restriction cases are governed by particular facts and it is neither possible nor desirable to establish a measuring stick and thereafter cut cases to fit for that would be too Procrustean."

Building restrictions constitute reciprocal negative easements and, as a general rule, are construed against the grantor and those who claim under him.

*Austin* v. *Kirby,* 240 Mich. 56; *Phillips* v. *Lawler,* 259 Mich. 567.

"It is the general rule that restrictions will be construed strictly against those claiming to enforce them and all doubts resolved in favor of the free use of the property. *Casterton* v. *Plotkin,* 188 Mich. 333; *Brown* v. *Hojnacki,* 270 Mich. 557 (97 A. L. R. 621)." *Moore* v. *Kimball,* 291 Mich. 455.

"Member of a family" may have various meanings under different circumstances. In *Rogers* v. *Kuhnreich,* 247 Mich. 204, a nephew was held not to be a member of defendant's family within the meaning of 1 Comp. Laws 1915, § 4825 (*cf.* 1 Comp. Laws 1929, § 4648 [Stat. Ann. § 9.1446]), creating a conclusive presumption that when an automobile was being driven by a member of the owner's family by consent, the owner was liable for the driver's negligence. This court said:

"The word 'family' is one of great flexibility. In *Carmichael* v. *Northwestern Mutual Benefit Ass'n,* 51 Mich. 494, it was said by Chief Justice GRAVES, speaking for the court:
" 'Now this word "family," contained in the statute, is an expression of great flexibility. It is applied in many ways. It may mean the husband and wife having no children and living alone together, or it may mean children, or wife and children, or blood relatives, or any group constituting a distinct domestic or social body. It is often used to denote a small select corps attached to an army chief, and has even been extended to whole sects, as in the case of the Shakers.
" 'We discover nothing in the statute implying a narrow sense, and we should not be inclined to attribute one where the result would cause injustice.' "

We hold that in the case at bar the restrictive covenant does not prevent the use of defendants' premises shown by the record.

The circuit judge who heard this case in the court below entered a decree denying plaintiffs the injunctive relief sought, and retained jurisdiction to reopen the case upon a fair showing that a substantial change had been made in the use of the premises.

The decree is affirmed, with costs to appellees.

CHANDLER, NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.