## Sassano Estate

Before Marshall, Kennedy and Weiss, JJ.

*John D. Stedeford,* for exceptants.

*Ruth Forsht* and *T. McKeen Chidsey,* Attorney General, for Commonwealth.

*James J. Leonard,* for City of Pittsburgh.

*Samuel G. Wagner,* for Allegheny Trust Co.

WEISS, J., December 6, 1948.—This matter comes before us on exceptions, filed by the Commonwealth of Pennsylvania, to an order of distribution, which included the Children's Aid Society of Allegheny County in the proration of funds held by a guardian of a weak-minded person, for support of the minor children of the weak-minded person, where no prior order of court was ever made for such support.

Michael J. Sassano was duly committed as a weak-minded person to the Pittsburgh City Home and Hos-

pital (now known as Mayview State Hospital) on January 20, 1933, in which institution he has remained as an inmate and where he still remains as such. On March 7, 1947, the guardian filed its account showing a balance for distribution of $2,503.89 and since that time has filed a supplemental account showing an additional balance for distribution of $176.02, making a total of $2,679.91. On April 8, 1947, the guardian presented its petition for examination and confirmation of its account and for its discharge. On April 21, 1947, the Children's Aid Society of Allegheny County filed a petition setting forth its claim for $5,859.38 for care and maintenance of the weak-minded person's minor children, praying that the distribution in the hands of the guardian be prorated on the basis that its claim, and that of the City of Pittsburgh and Commonwealth of Pennsylvania, should be paid in the amount each bears to the whole amount for distribution. On May 12, 1948, the Commonwealth of Pennsylvania presented a petition asking that the claim of the children's aid society be ignored and the funds be distributed prorata between it and the City of Pittsburgh. A hearing and argument on the same were held on the same date after which, on October 1, 1948, the contention of the children's aid society was sustained and a decree entered ordering distribution of the funds to the three claimants. On October 5, 1948, the Commonwealth of Pennsylvania filed exceptions to this decree because of the inclusion of the children's aid society as a participant to the funds.

The narrow issue involved in this case is whether the Act of June 1, 1915, P. L. 661, as amended, 71 PS §1781, et seq., will permit the children's aid society to share in the distribution of the funds of a weak-minded person for support of the minor children of such weak-minded person, where such society did not first obtain an order of support prior to the debts which had ac-

crued to the Commonwealth of Pennsylvania because it maintained the weak-minded person in its institutions.

While we are deeply sympathetic with the position of the children's aid society and would like to grant it some relief, we feel that its remedy will have to be by way of an appeal to legislature for modification of the aforementioned act of assembly, as the law and statutes at present are clear, and under them we could not sustain the contention of the children's aid society.

The children's aid society first fell into error in *assuming* that it stood in loco parentis toward the minor children of the weak-minded person just because it furnished money for their support. Loco parentis is a legal and factual status and requires a definite fulfillment of conditions precedent: Kransky v. Glen Alden Coal Co., 354 Pa. 425, 47 A. (2d) 645, where the Supreme Court, in a clear holding that mere support is not sufficient to create the status of loco parentis, said:

"Aside from the support furnished the child by Kransky, as above stated, there is not a word of testimony and, naturally, no finding that he had ever indicated by word or act any intention on his part to assume the responsibilities of a lawful father to the child. In loco parentis is a legal status and proof of essential facts is required to support a conclusion that such a relationship existed. While the support and maintenance of a dependent child is a fact of evidentiary value in determining whether the one furnishing the support stands in loco parentis to the child, it is necessary that the evidence as a whole be sufficient to justify a finding that the supporting person intended to assume the rights, duties and responsibilities of a lawful parent to the child.

"In Robinson's Estate, 35 Pa. Superior Ct. 192, 195, the Superior Court adopted as a 'proper definition' of a person in loco parentis to a child, viz., 'a person who

*means* to put himself in the situation of a lawful father of the child with reference to the father's office and duty of making provision for the child.' (Italics supplied.) That definition has since been approved and followed a number of times but always the *intention* to assume a parent's responsibility for a child has been an important element in determining the existence of the relationship: See Flinn v. Sonman Shaft Coal Company, 153 Pa. Superior Ct. 76, 79, 33 A. 2d 525; Renovich v. Bethlehem Mines Corporation, 131 Pa. Superior Ct. 351, 354, 200 A. 122; Dime Trust & Safe Deposit Co., Ltd., v. Philadelphia & Reading Coal & Iron Co., 78 Pa. Superior Ct. 124, 131."

The claim of the children's aid society that it is entitled to share in such estate cannot be justified by a reading of the aforementioned act of assembly and its supplements, the provisions of which cause us to reject any such contention. Nowhere in the act is there any provision that could be strained to include it. The best that could be said for the children's aid society, were we not to hold it a mere volunteer, was that it was a general creditor of the estate. This does not help the society in the circumstances of this case. In fact, the act is declaratory of the common law giving the Commonwealth precedence over general creditors. Section 6 of this act reads as follows:

"All claims by the Commonwealth for maintenance, as herein provided, in the distribution of any of the estate of any person so maintained, *shall take precedence and be paid* after other claims which by law are now given precedence, and *before any claims of general creditors.*" (Italics supplied.)

Section 7, providing for prorating, is not involved here and, even were it applicable to the present issue, does not include any such agency as the children's aid society.

The only issue before the court at this time is whether or not the children's aid society may share in the proceeds of this fund and this we must unanimously decide in the negative.

The exceptions of the Commonwealth are hereby sustained.