## Henry Estate

28

*Chauncey M. Depuy*, for petitioner.

*Lawrence C. Zeger*, contra.

SHEELY, P. J., September 21, 1954.—The claim of J. Howard Henry to the family exemption in the estate of his father, D. S. Henry, is opposed by other members of the family. The important question is whether claimant formed a part of decedent's household.

Where there is no spouse the right to the family exemption rests in "such children as form a part of decedent's household": Fiduciaries Act of April 18, 1949, P. L. 512, sec. 211. While the basic reason for the exemption is to make humane provision for the immediate needs of the family following the death (Henkel's Estate, 13 Pa Superior Ct. 337), and to give a benefit similar to a debtor's exemption (Neff's Appeal, 21 Pa. 243, 247), proof of necessity of those entitled to the exemption has not been made a condition precedent: Palethorp's Estate No. 2, 3 Dist. R. 145; In re Calhoun's Estate, 72 D. & C. 443; Cullison Estate, 4 Fid. Rep. 393, 395. The essential requirement is that the claimant formed "a part of the decedent's household" or, in the language of the Fiduciaries Act of June 7, 1917, P. L. 447, a "part of the family" of decedent. No one can make a claim for the family exemption who did not stand in the family relation toward decedent: Henkel's Estate, 13 Pa. Superior Ct. 337, 340; Andrews' Estate, 30 D. & C. 271; Moore's Estate, 54 York 152.

After the death of the wife of D. S. Henry in 1950, Mr. Henry requested his son, J. Howard Henry, to sell his own farm and to return to the home farm and assume its operation. The father was conducting a fertilizer business which he continued to operate on his own account. A written agreement was entered into under which claimant operated the farm until his father's death on February 14, 1953. The agreement provided that the parties should receive equal shares from the farm, the father would pay all taxes, keep the buildings in repair, help repair the fences, and furnish one half of the seed and fertilizer. Petitioner was to have the "use of buildings except three rooms in the house reserved for his (lessor's) use".

The rooms reserved by decedent were a bedroom, a combined living-dining room, and a pantry which was equipped for cooking. Decedent lived in his reserved rooms, but also used other parts of the house without restriction. The reserved rooms were furnished by decedent, but for the most part the remainder of the house was furnished by claimant. Decedent had his own coal which he kept in claimant's cellar along with his own canned goods and meat. He would prepare his own meals in his rooms, but when he was at home at the time claimant's family were eating he would frequently eat with them. Even then he always furnished his own bread since he could not eat home-made bread. When his other children would visit him they would visit in his rooms and would usually prepare meals for him, sometimes preparing food for several days ahead. Claimant's wife usually cleaned decedent's rooms and did his laundry, but when decedent's daughters visited him they would also clean the rooms and would sometimes take laundry to their homes to be done. Decedent was afflicted with asthma and when he was ill, including his last illness, he was cared

for by claimant and his wife. Decedent kept some chickens and some cattle on the farm, and also stored his two trucks, used in his fertilizer business, there. He would sometimes help claimant with his farm work, but when he helped in his lumbering operation he was paid wages.

The question of what constitutes a household was carefully considered by the Superior Court in Hoff et al. v. Hoff et al., 132 Pa. Superior Ct. 431, 435, a case arising under an insurance policy in which the facts were very similar to the present case. The court there said that: "From the definitions it is obvious that household means a domicile establishment under a single head or management." The court went on to point out that: "Neither relationship nor the presence of all the parties within one dwelling is the determining factor, but rather the existence of such domestic arrangements and circumstances as would create separate domestic establishments, each having its own head and separate management."

See, also, Brovdy et al. v. Jones & Laughlin Steel Corporation, 145 Pa. Superior Ct. 602; Kransky v. Glen Alden Coal Company, 158 Pa. Superior Ct. 544; Bair v. Robinson, 108 Pa. 247.

In the Hoff case a son and his wife and six-year-old child lived in the same house with the son's father and mother. The house was owned by the father and contained six rooms. The first floor consisted of a front living room, dining room and kitchen; between the living room and dining room there was a small sitting room separated from the dining room by only a large archway. The dining room also opened through French doors upon a porch. The upper floor consisted of front, center, and back bedrooms, and a bathroom.

The son and his family brought their own furniture to the house and occupied the living room and

front and center bedrooms, which were furnished with their furniture except that the father's piano remained in the living room. This living room was separated by French doors from the rest of the house and had its own entrance from the vestibule. The other rooms were used and furnished by the father and his wife. The kitchen and bathroom were used by all in common. Separate meals were usually prepared and served, the meals for the son's family being sometimes served on the sun porch. Occasionally one meal was served for both families. The son's wife did most of the housework in return for their occupying the rooms rent free. Two grocery accounts were kept separate. The telephone, electricity, and gas service bills were arbitrarily divided in half. Their milk was bought from different dairies. The provisions, kitchen utensils, and dishes were separated; there were radios in both living rooms; there were two telephones having the same number; and two sets of laundry equipment and cleaning equipment. The son's family entertained their guests in their own rooms using their own utensils and dishes.

On these facts, the court held that from the method of living and the domestic arrangements a jury could properly conclude that there were two separate households under one roof, the son being the head of one and the father the head of the other.

In the present case, the lease agreement made the son a tenant of the father, with the father reserving an apartment for his own use. Throughout the continuance of the arrangement the father maintained his own supply of food and entertained his guests in his own apartment. While he frequently took meals with claimant and his family the primary intention seemed to be to maintain his own independence or, in

other words, to manage his own household separate and apart from that of his son.

The only activities which would tend to indicate a common household were that he would frequently take his meals with claimant when he was home at meal time, and that claimant's wife looked after his apartment and did his laundry and cared for him when he was sick. Decedent's daughters also did his cleaning and his laundry. These activities, standing alone, would be insufficient to overcome the effect of the lease and the actual maintenance of a separate establishment by decedent.

We conclude that the evidence shows that decedent maintained a household separate and distinct from that of his son and that claimant was not part of decedent's household and is not entitled to the family exemption.

And now, September 21, 1954, the petition of J. Howard Henry for the family exemption in the estate of D. S. Henry, deceased, is dismissed at the cost of petitioner.