## Graybill v. Scott Township Zoning Hearing Board

*John A. Mihalik*, for appellants.
*William S. Kreisher*, for Zoning Hearing Board.

MYERS, *P.J.*, September 12, 1977—Plaintiff appellants are the owners of certain real estate located at Central Road and Third Street in Espy, Scott Township, Pa. Upon the premises is erected a large dwelling house with an attached apartment. Appellants are renting the dwelling house to three unrelated individuals; the attached apartment is being rented to five additional unrelated individuals.

According to the zoning ordinance of Scott Township, appellants' property is located in an "R-S Residential-Suburban" district. Single family detached dwellings are permitted in an R-S district.

Also permitted, under certain limited circumstances, are group dwellings containing single, two-family, and multiple family dwellings in cluster-type developments.

In the ordinance, family is defined as follows: "One or more persons who live in one dwelling unit and maintain a common household. May consist of a single person or of two or more persons whether or not related by blood, marriage or adoption. May also include domestic servants and gratuitous guests, but not occupants of a club, fraternal lodging, or boarding house."

Following a hearing held on October 20, 1976, the *Scott Township Board of Adjustment* concluded that appellants' use of the premises was in violation of the ordinance. Specifically, the board found that the occupants of appellants' dwelling were not "families," within the meaning of the ordinance.

Appellants then filed the instant appeal to this court. The parties stipulated that the court would not address any of the constitutional issues raised in the appeal, but would confine itself to an examination of the validity of the zoning board's interpretation of the ordinance.

We believe that the ordinance has been properly interpreted by the board. In our view, the individuals occupying appellants' premises are not "families."

The record of the hearing reveals the following facts: that each group of tenants has a single combined lease with the landlord, but that each tenant is nonetheless individually responsible for paying his own rent; that the landlord has the power to alter the make-up of the two groups by evicting any particular tenant or by adding a new tenant; that

each group of tenants usually buys, cooks, and eats its meals together; that each group of tenants makes its decisions collectively; that neither of the two groups of tenants has a "head of household;" and that none of the tenants are related by blood or marriage.

The words "family" and "household" are of indefinite conception, and they give rise to varying definitions. Often the two words are used synonymously. However, "household" has a broader meaning than "family," since the latter conveys the notion of relationship by blood, marriage, or otherwise.

Typically, Pennsylvania courts have defined "household" as a group of persons who dwell together under a common head. For example, in Brovdy v. Jones & Laughlin Steel Corp., 145 Pa. Superior Ct. 602, 21 A. 2d 437 (1941), the Superior Court stated: "A household means a domestic establishment under a single head or management." Accord: Shank Estate, 399 Pa. 656, 161 A. 2d 47 (1960); Kransky v. Glen Alden Coal Co., 158 Pa. Superior Ct. 544, 45 A. 2d 384 (1946); Johnson v. Braunsberg, 51 D. & C. 2d 659 (1970).

Central to the concept of "household" is the notion of a common head. Since the groups of tenants in the instant case are not under a common head, but rather make their decisions collectively, they clearly do not constitute a "family" or a "household," as those terms have been defined in the case law of Pennsylvania.

If the authors of the township zoning ordinance had intended to permit groups of unrelated individuals to live together in an R-S district, we must assume that those authors would have so indicated that intent by defining "family" as a "housekeeping

unit" or a "collective domestic body." Since the authors instead utilized the term "household," we are compelled to conclude that the authors desired to exclude groups without a common head.

Moreover, when a court is called upon to give a specific meaning to a word in order to resolve a particular question of law, it is fundamental that the judicial construction relate to, and be consistent with, the context in which the word is found.

"A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances. . . . " Towne v. Eisner, 245 U.S. 418, 425 (1918). If the word to be interpreted is found in a legislative prescription, the overall purpose of the legislation is of particular relevance in arriving at the appropriate meaning.

The obvious purpose of the Scott Township Zoning Ordinance—and of zoning ordinances in general—is to regulate the manner in which private property may be used, in accordance with a comprehensive plan designed to promote the underlying interests of the community as a whole. One permissible objective in carrying out this overall purpose is to control the population density in residential neighborhoods. See Scott Twp. Zoning Ord., §100 and §400.

The provision limiting occupancy to "families" in the R-S zone was clearly intended to further this objective. In this context, reasonable judicial construction of the word "family" must be one which excludes the groups of persons occupying the premises owned by appellants. Otherwise, an acknowledged purpose of the zoning ordinance would be defeated by a strained interpretation of its language.

## ORDER

And now, September 12, 1977, the within appeal is denied, and the decision of the Zoning Hearing Board of Scott Township is affirmed.