## Smith v. Field

*Michael H. Egnal*, for plaintiffs.
*William G. Kozub*, for defendants.

FORER, *J.*, February 2, 1979—Cecil O. Smith, Jr. and three other residents of the 4600 block of Osage Avenue and vicinity in West Philadelphia, Pa., brought this action for a preliminary and permanent injunction seeking to enforce a restrictive covenant. Defendant Martha Field has been the record owner of the premises located at 4628 Osage Avenue, Philadelphia, Pa. since August 13, 1976. Ms. Field personally occupied the house until June, 1978. Thereafter, the premises have been occupied by defendant Julie Shauer and two unrelated adult females.

Defendant Field was formerly a professor of law at the University of Pennsylvania and is now a law professor at the Harvard Law School, Cambridge, Mass. Plaintiffs attempted to make personal service on her at the University of Pennsylvania Law School and at the Osage Avenue address. Plaintiffs then served defendant on two occasions by registered mail, return receipt requested, at the Harvard Law School. The first return receipt was signed by Don Marchand on November 17, 1978. The second return receipt was signed by S. Puzzi on November 27, 1978, indicating that the signature was made as an authorized agent. On December 4, 1978, defendant Field wrote to counsel for plaintiff offering

to settle the case, which offer was later refused. On December 8, 1978, defendant wrote to this court. On January 3, 1979, defendants' counsel filed preliminary objections moving to dismiss the complaint because of lack of personal service. Service on an out-of-state defendant may be made by registered mail, return receipt requested, pursuant to Act of July 9, 1976, P.L. 586, 42 Pa.C.S.A. §5323(a). The statute provides that: "When service is made by mail, proof of service shall include a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the tribunal." §5323(b). Because of the return receipt and defendant Field's communications with counsel and the court, the court is satisfied that she received proper notice of this action. Defendant Shauer admits that she was properly served and filed a responsive pleading. Defendant Shauer in her answer and new matter alleges that the use of the premises is not in violation of the covenant, that the neighborhood has changed and that there have been many violations of the covenant.[1]

The neighborhood in which the subject premises is located is a desirable residential area occupied in large part by persons in the academic, professional

---

1. Defendant Shauer alleges that because the neighborhood has changed the covenant should not be enforced. See, e.g., Deitch v. Bier, 460 Pa. 394, 333 A. 2d 784 (1975). Additionally, she argues that plaintiffs should be estopped from asserting the restriction against defendants on the equitable theory of "unclean hands," on the basis that plaintiffs have failed to enforce the restrictions personally against property owners who continue to reside on the premises. Cf. Reick v. Virginia Manor Co., 251 Pa. Superior Ct. 59, 380 A. 2d 375 (1977).

and business worlds. Plaintiffs admit that the present occupants of 4628 Osage Avenue are three Caucasian, professional women, that their occupancy does not constitute a nuisance and that the property is well maintained. There is no doubt that the premises are not overcrowded by the presence of three adults. Plaintiffs further admit that if the three occupants were three sisters or cousins, they would have no objection and that the requirements of the restrictive covenant would be met.[2]

Plaintiffs base their action solely on the literal wording of the covenant. The deed covering Field's property and others in the vicinity, including that of plaintiffs, provides, inter alia: "That no building now on said lot nor any hereafter erected shall be used or occupied as a public garage, apartment house, manufacturing establishment, store or for

---

2. The law is clear that blood relatives cannot be precluded from residing together: Moore v. City of East Cleveland, 431 U.S. 494 (1977). A zoning ordinance prohibiting more than two unrelated people constituting a family unit has been upheld as constitutional. See, e.g., Village of Belle Terre v. Boraas, 416 U.S. 1 (1974). However, an ordinance is a legislative expression of a broad, rational land-use public policy. It is enforceable by the government. A restrictive covenant must be distinguished. As the court pointed out in Belle Terre, it is unconstitutional to have a scheme under which private individuals can "'withhold consent for selfish reasons or arbitrarily and may subject the trustee [owner] to their will or caprice.'" Id. at 6, quoting from Seattle Trust Co. v. Roberge, 278 U.S. 116 (1928). Action to enforce a restrictive covenant is brought or not brought at the caprice of private individuals and for their own selfish reasons. Moreover, there is no compelling state interest in enforcing restrictive covenants for the benefit of private individuals owning or occupying properties in the vicinity, which would justify an invasion of privacy.

any noxious or malodorous occupation nor be used for any purpose other than that of a *private dwelling house* with private garage nor shall such building ever be occupied or used by any persons other than the Caucasian race. . . ."[3]

Covenants restricting the use of property are not favored by the law, but are legally enforceable unless in violation of other rights: Reick v. Virginia Manor Co., 251 Pa. Superior Ct. 59, 380 A. 2d 375, 377 (1977); Jones v. Park Lane for Convalescents, 384 Pa. 268, 272, 120 A. 2d 535 (1956). These covenants must be strictly construed. Outmoded restrictions must give way to new and modern uses of the property: Reick v. Virginia Manor Co., supra, at 377.

Defendants maintain that the three tenants are living together as a family unit. No evidence to the contrary was offered. It is plaintiff's contention that a family unit must consist of persons related by blood or marriage.

It is necessary to distinguish between "building restrictions," those concerned with the physical or external appearance of the building, and "use restrictions," those concerned with the purposes for which the buildings are used, the nature of their occupancy, and the conduct therein as it affects the comfort, health and welfare of the neighborhood: Jones v. Park Lane for Convalescents, supra, at 537-38. Although the term "private dwelling house" has often been interpreted in the context of a building restriction, e.g., Beck v. Frost, 22 D. & C. 2d 475 (1960), Pehlert v. Neff, 152 Pa.

---

3. It is clear that the racial restriction is unconstitutional: Shelley v. Kraemer, 334 U.S. 1 (1948).

Superior Ct. 84, 31 A. 2d 446 (1943), and Haskell v. Gunson, 391 Pa. 120, 137A. 2d 223 (1958). No relevant authority appears to have construed the phrase in the context of a use restriction going not to the functional use of the premises but to the identities of the occupants.[4]

Defendants admit that they are not related by blood or marriage. Plaintiffs concede that defendants are not operating a rooming house but are occupying the premises as a family unit, all three occupants jointly using the kitchen, living and other portions of the house. It is clear that they function as a single family unit. Plaintiffs suggest that because each of these three adult women drives her own automobile, they are not functioning as a single household and are causing excessive traffic. The falsity of this argument is obvious when one considers that in any household composed of three individuals over the age of 16, three cars may frequently be found. Further, three adult sisters or three adult brothers would be as likely to have three automobiles as would three unrelated adult women.

The term "dwelling" restricts the character of the use of the building, eliminating any business or

---

4. Defendant refers this court to Gilbert v. Borlans, C. P. March term 1944, C. P. no. 6, in Equity, no. 2501, wherein defendants were enjoined from violating the covenant at issue herein. In Gilbert, defendants tried to alter the premises into apartments, which would be a violation of a building restriction, not a use restriction. Similarly, a "private residence" building restriction precluded the erection of two apartment houses in Beck v. Frost, supra. See also Taylor v. Lambert, 279 Pa. 514, 124 Atl. 169 (1924); Fox v. Sumerson, 338 Pa. 545, 13 A. 2d 1 (1940).

commercial use. The word "private" excludes all residences open to the general public. "The distinction between a private dwelling house or a private residence, on the one hand, and a house built or occupied as a residence for two or more families, is quite obvious. In the one case it is single, private and personal; in the other it is a sort of tenement affair." Taylor v. Lambert, footnote 4, supra, at 172-173. See also Bennett v. Lane Homes, Inc., 369 Pa. 509, 515, 87 A. 2d 273 (1952). Hence, a house in which several families occupying separate and distinct apartments reside is a "community house," not a private residence: Fox v. Sumerson, footnote 4, supra, at 547-48. Boarding houses are quasi-public places: Hoffman's Petition, 7 D. & C. 88 (1925). "[T]he term 'private dwellings' embodies all species of the genus 'single family dwelling.'" Taylor v. Lambert, supra, at 174. "Use as a private dwelling house means use by way of living, eating, sleeping and enjoying the various intellectual and social diversions incident to private family life." Hogan v. Rose, 14 D. & C. 256, 257 (1930). See also Haskill v. Gunson, supra, at 122. "Family" is a word of great flexibility, meaning any group consisting of or constituting a distinct, domestic or social body: Boston-Edison Protective Assn. v. Paulist Fathers, Inc., 306 Mich. 253, 10 N.W. 2d 847, 849 (1943). It is obvious that the living arrangement exhibited in the case at bar is not a "tenement affair," but rather a familial structure.[5]

_____

5. Some cases define "household" as a domestic establishment under a single head or management. See, e.g., Brovdy v. Jones & Laughlin Steel Corp., 145 Pa. Superior Ct. 602, 21 A. 2d 437 (1941); Graybill v. Scott Twp. Zoning Board, 6 D. & C. 3d 756, 757 (1977). In 1979, this court cannot find that a household must be "headed" by any one individual, to wit, a

It cannot be disputed that the meaning of "family" has undergone vast sociological changes in recent years, and the classical nuclear family is no longer the sole acceptable family structure in society today. Plaintiff's contention that only individuals related by blood or marriage can reside together in a "private dwelling house" would necessarily preclude a live-in domestic or nurse, as well as a foster child.[6] This narrow construction of the phrase "private dwelling house" would similarly prohibit the long-term visit within the family of a friend.

Although defendants do not raise several serious constitutional issues which are implicit and explicit in the case, they cannot be ignored by the court. It has long been settled that neighbors cannot object to ownership or occupancy of a dwelling by reason of race, religion, or color. See NAACP v. Button, 371 U.S. 415, 430-31 (1963); Village of Belle Terre v. Boraas, footnote 2, supra, at 15-18 (Marshall, *J.*, dissenting). So long as zoning laws are not violated and the occupants do not engage in activities which constitute a nuisance, neighbors have no standing to object to the life-style of the occupants. It would be a gross invasion of privacy

father or a mother, a husband or a wife. See also Pennsylvania Constitution Art. 1, §28. Other cases more properly define a "household" as a family residing together in one dwelling, using common living quarters and facilities under such circumstances as to create a single-family unit. See Johnson v. Braunsberg, 51 D. & C. 2d 659, 662 (1970); Shank Estate, 399 Pa. 656, 658, 161 A. 2d 47 (1960).

6. See Boston-Edison Protective Assn. v. Paulist Fathers, Inc., supra, where a "one-family dwelling" restriction was interpreted to permit five priests and their two servants to live together: 10 N.W. 2d at 848.

for neighbors to be permitted to inquire into the marital or other relationships of the parties occupying the premises as a family unit. See Roe v. Wade, 410 U.S. 113 (1973); Griswold v. Connecticut, 381 U.S. 479 (1965). See also Planned Parenthood v. Fitzpatrick, 401 F. Supp. 554 (E.D. Pa. 1975). It requires no citation of authority to hold that rights of privacy would be invaded if neighbors could demand to see the marriage license, birth certificate, or family tree of individuals peacefully occupying residential premises. This court takes judicial notice of the fact that today couples who are not legally married rent, purchase, and/or occupy residential premises as a family unit. It has long been customary in the United States for two or more school teachers or students to occupy a private dwelling, sharing expenses and cooking facilities as a family unit. In such situations, it is clear that these persons are not related by blood or marriage. Although plaintiffs in the case at bar apparently feel at liberty to inquire into the relationships between the present occupants of the subject premises, this court cannot permit such a gross invasion of privacy.

Nothing in this opinion should be construed as authorizing the use of any premises governed by the aforesaid restrictive covenant as a rooming-house or boardinghouse, or for any purpose other than a single family dwelling.

The court makes the following

## FINDINGS OF FACT

1. Plaintiffs are Pennsylvania residents and owners of real property located in the 4600 block of Osage Avenue, Philadelphia, Pa., and the immediate vicinity.

2. Defendant Martha A. Field is now a Massachusetts resident.

3. Defendant Field was twice served at her office at the Harvard Law School by registered mail; return receipts were signed. She also communicated with defense counsel and the court prior to filing preliminary objections.

4. Defendant Field is and has been since August 13, 1976, the owner of real property located at 4628 Osage Avenue, Philadelphia, Pa.

5. Since June, 1978, the premises situated at 4628 Osage Avenue has been occupied by defendant Julie Shauer and two other unrelated adult females.

6. The present tenants of that property have not violated any laws or done any acts which could constitute a nuisance. The property is physically well maintained.

7. The deed under which defendant Field purchased the premises contains a restrictive covenant which provides in pertinent part: "That no buildings which may hereafter be erected on the above described lots or ground shall be used or occupied as . . . other than that of a private dwelling house. . . ."

8. The 4600 block of Osage Avenue, Philadelphia, is a desirable residential neighborhood.

The court enters the following

## CONCLUSIONS OF LAW

1. Defendant Martha Field was properly served with notice of these proceedings.

2. The present occupants of 4628 Osage Avenue are residing as a family, using the premises as a private dwelling house.

## ORDERS

And now, February 2, 1979, the court enters the following orders;

1. Defendant Field's preliminary objections are overruled.

2. Plaintiff's motion for summary judgment is denied.

3. Defendant Field is given 20 days in which to file a responsive pleading.