STATE, *ex rel.* CHARLES E. HUGHES, v. T. T. WENTWORTH, JR., as Tax Collector of Escambia County.

185 So. 357.
Division B.
Opinion Filed December 16, 1938.

566

*Philip D. Beall, Jr.,* for Petitioner;

*H. O. Pemberton,* for Respondent.

PER CURIAM.—This cause is before us on motion to quash an alternative writ of mandamus commanding the tax collector of Escambia County to issue, without being required to pay therefor, a license to the petitioner, a resident of said County, authorizing him to operate for a profit a "place where dancing is engaged in" (for which a State license of $100.00 is imposed by Section 23 of Chapter 18011, Acts of 1937 and a county license of $50.00 is imposed by Section 2 of the same Act) upon the ground that he is exempted from paying for such license by Section 27 of said Act.

The application for such "exempt license," a copy of which is attached to and made a part of the alternative writ, was accompanied by certificates of two reputable physicians practicing in Escambia County which stated that petitioner was a confirmed invalid, incapable of performing manual labor. The application also had attached thereto an affidavit of the petitioner stating that he owned and operated in said county a place where dancing was engaged in for a profit, and that in the operation of said place the petitioner used his own money or capital only, which said sum so used did not and does not exceed the sum of three hundred dollars. The petition and alternative writ further allege that petitioner has paid all licenses imposed upon him in the pursuit of said business or operation of said place by the statutes of this State other than those sought to be imposed upon him by the provisions of said Chapter 18011.

. The question here involved is whether or not the legislature intended that the exemption allowed by Section 27 of Chapter 18011 should apply to persons who operate for a profit any place where dancing is engaged in, etc., upon which a license is imposed by said Section 23 of the Act.

· The pertinent portions of Section 23 are as follows: ·

"Section 23. Every person who operates for a profit any place where dancing is engaged in or entertainment such as variety program or exhibitions, is provided, shall pay a license tax of $100.00. The license required by this section shall be in addition to any other license required by law and the operation of such a place as herein described shall not be construed to be incidental to some other business; provided, that a license may be issued for one night only, upon the payment of twenty-five dollars, but in such cases the Tax Collector must write across the license the words, 'Good for one night only.' "

Section 27 reads as follows:

"Section 27. All confirmed cripples, deaf and dumb persons, or invalids physically incapable of manual labor, and all Confederate Veterans of the Civil War, and who use their own capital only, not in excess of three hundred dollars, shall be allowed to engage in any business or occupation in Counties in which they live without being required to pay for a license; except that this exemption shall not apply to any of the occupations specified in Section 22. The exemption provided by this section shall be allowed only upon the certificate of the County Physician, or other reputable physician that the applicant claiming the exemption is a confirmed cripple or invalid, the nature and extent of the disability being specified therein, and in case the exemption is claimed by a Confederate Veteran of the Civil War proof of his right to the exemption shall be made. Any person entitled to the exemption provided by this Sec-

tion shall, upon application and the furnishing of the necessary proof as aforesaid, be issued a license which shall have plainly stamped or written across the face thereof the fact that it issued under this section, and the reason for the exemption shall be written thereon. Disabled veterans of the World War and the Spanish War shall be allowed the same exemptions as are now allowed by law."

Section 22, referred to in Section 27, reads:

"Section 22. Every fortune teller, clairvoyant, palmist, astrologer, phrenologist, character reader, spirit medium, absent treatment healer, or mental healer, and every person engaged in any occupation of a similar nature shall pay a license tax of $100.00; Provided, that this section shall not be construed to require members of any recognized Christian Denomination who pray for the sick, to obtain a license."

The words in Section 23 of the statute, "and the operation of such a place as herein described shall not be construed to be incidental to some other business," was evidently placed therein so as to avoid any misconstruction of the legislative intent by reason of the language in the last paragraph of Section 5 of the Act to the effect that no license shall be required under that section where the trading in or selling of tangible personal property is "a necessary incident" of some other business classification for which an occupational license is required and which is carried on at the place of business licensed under such other classification.

In support of the motion to quash the alternative writ it is argued that, in the enactment of Chapter 18011, the legislature imposed licenses on various activities and it is to be noted that each and every section of the Act imposing a license refers to the activity as a "business or occupation"

with the exception of Sections 14, 16, 17, 19, 20 and 23. Section 14 refers to renting advertising space in or on boats, cars, busses, trucks or other vehicles: It is argued that this is not a business or occupation in the sense contemplated by the exemption provision for the reason that the business is the operation of the boat line, street car line or other vehicles on which advertising matter can be placed. Section 16 refers to persons who travel from place to place purchasing junk, and it is argued that this section would apply to any one who might take a truck and go from place to place purchasing junk, even though they were purchasing it entirely for their own use. Section 17 refers to the owners of toll bridges and it is argued that the license is apparently imposed on the ownership of the bridge and not on a business or occupation. Section 18 refers to the operation for profit of coin-operated devices, and it is argued that as such devices are operated in connection with some other business the man with a store in which such a device is operated is not engaged in the business of operating the device but is simply charged for the privilege of maintaining this instrumentality, and that Section 20, imposing licenses on the operation for a profit of amusement devices falls in the same category as Section 19. It is further contended that, as to Section 23, with which we are here particularly concerned, it is evident from the language of this section that the legislature recognized the operation for a profit of a place where dancing is permitted, not as a business or occupation *per se,* but as an instrumentality or activity, used in connection with various businesses, which activity constituted an evil on which an unusually high license should be imposed; the evident purpose being to either reduce the number of such places, or at least secure additional revenue from them to partially offset the cost of policing such places and the crime bill that the tax payers

must pay as a result of their operation. It is further contended that it is apparent on its face that this section is an attack upon the mushroom spread of "jook-joints" all over the State, and that it certainly could not have been the intention of the legislature to impose a high license on such places and then provide for the evasion of that license by permitting "exempt licenses" to be issued therefor.

Counsel for the respondent tax collector admit that Section 27 of the Act, which provides for "exempt licenses," excepts from its operation the occupations specified in Section 22 of the Act, hereinabove quoted, which is the only exception expressly provided for in said Section 27, but our attention is called to the fact that this Section 22, imposing a license on fortune tellers, etc., refers to this class of activities as an "occupation" and imposes thereon the same high license that is imposed on places operating for a profit where dancing is engaged in. From this it is argued that the legislature recognized that the occupations referred to in Section 22 were evils that should be suppressed, but having referred to them as an "occupation" it became necessary to specifically except such occupations from the exemption allowed in Section 27; that the operation for a profit of a place where dancing is engaged in was looked upon by the legislature as an instrumentality or facility in connection with something else, and that it was evidently not considered as a "business or occupation" within the meaning of Section 27, and that therefore it was not necessary to be referred to in the exception contained in Section 27.

In this connection our attention is called to our holding in the case of Harper v. England, 124 Fla. 296, 168 So. 403, wherein this Court said:

"It also appears to be well settled that he who would shelter himself under an exemption clause must clearly show that he is entitled under the law to exemption, and

the law is to be strictly construed as against the person claiming the exemption and in favor of the public."

It is contended that when this reasoning is applied to the present case, and the legislative intent taken into consideration, it would be unreasonable to say that the license required by Section 23 of every person who operates for a profit any place where dancing is engaged in can be evaded through the use of a provision of the law in Section 27 that was intended to operate in a limited field and to be of assistance to those physically disabled and with very limited financial means. It is stated in the brief of the respondent that there must be an organized movement to evade the license imposed by Section 23 by the use of the exemption provided in Section 27, because an examination of the license reports of the respondent for the license year 1937-38 discloses that in Escambia County during that year 69 licenses were obtained for "the operation for a profit of places where dancing is engaged in," 18 of which licenses were paid for and the other 51 licenses were obtained on exemption claims filed under Section 27, and that practically all of such claims were filed with the tax collector by one person.

The gist of respondent's contention is that the petitioner is not engaged in a "business or occupation" for which an exemption is given under the provision of Section 27 of said Act.

The allegations of fact contained in the alternative writ are sufficient to show that the petitioner is entitled to the exemption contained in Section 27, if that section is applicable to the license imposed by Section 23. So the only question to be decided is whether or not the exemption set forth in Section 27 is applicable to a person who applies for a license to "operate for a profit a place where dancing is

engaged in, or entertainment such as variety programs or exhibitions is provided," under said Section 23.

Section 27, as we have seen, provides that all confirmed cripples, all invalids physically incapable of manual labor, etc., and who use their own capital only, not in excess of $300.00, shall be allowed to engage "in any business or occupation" in counties in which they live without being required to pay for a license; "except that this exemption shall not apply to any of the occupations specified in Section 22."

The application of the maxim *expressio unius exclusio alterius* would tend to the conclusion that the legislature intended Section 27 to apply to *all* businesses and occupations except those specified in Section 22, which latter section covers fortune tellers, clairvoyants, etc.

But the respondent tax collector insists that a person who operates for a profit a place where dancing is engaged in, as specified in Section 23, is not engaged in any "business or occupation" within the meaning of Section 27, and that the exemption therein provided for was not intended by the legislature to apply to the license imposed by Section 23.

We are inclined to concur in this contention for the reason that, as we held in Pellicer v. Sweat, 131 Fla. 60, 179 So. 423, Section 23 of Chapter 18011 was enacted in the exercise of the *police* as well as the *taxing* power of the legislature, and that said section was dealing with a "peculiar" business, which was subject to regulation "in the interest of the public welfare." In view of conditions existing in this State at the time this act was adopted, of which this Court may take judicial knowledge, it is reasonable to conclude that in fixing this high license on the "peculiar" activity or business specified in Section 23, it was the intention of the legislature, to some extent at least, to suppress the same. If so, it is not reasonable to assume

that they intended that any class of citizens, even those named in Section 27, should be permitted to engage therein without paying the license imposed by said Section 23.

In statutory construction, the legislative intent is the pole star by which the courts must be guided, even though it may appear to contradict the strict letter of the statute. No literal interpretation should be given that leads to an unreasonable conclusion or purpose not designated by the law-makers. State v. Sullivan, 95 Fla. 191, 116 So. 255. Thus we recently held, in the as yet unreported case of Lee v. Gaddy, decided August 1, 1938, that the words "any profession," as used in Section 10 of this same act, imposing a license in those engaged in "any profession," was not intended to cover pharmacists, ministers of the gospel and school teachers upon whom the legislature had never before imposed a license.

The motion to quash the alternative writ is accordingly granted.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

TERRELL, C. J., and BUFORD, J., concur in the opinion and judgment.

THOMAS, J., dissents.