198 So.2d 643 (1967)
Coleman F. CARROLL, As Bishop of the Diocese of Miami, a Corporation Sole, Appellant,
v.
CITY OF MIAMI BEACH, a Municipal Corporation, Appellee.
Nos. 66-152, 66-153.
District Court of Appeal of Florida. Third District.
April 18, 1967.
Rehearing Denied June 2, 1967.
*644 Joseph M. Fitzgerald and Thomas A. Horkan, Jr., Miami, for appellant.
Joseph A. Wanick, City Atty., for appellee.
Before PEARSON, CHARLES CARROLL and SWANN, JJ.
SWANN, Judge.
The City of Miami Beach, Florida, has an ordinance which defines a family as:
"FAMILY: One or more persons occupying premises and living as a single housekeeping unit, as distinguished from a group occupying a boarding house, a lodging house or hotel, as herein defined."
The Bishop of the Diocese of Miami, a corporation sole, owns property in the City of Miami Beach which he desired to use as a home for a small group of novices, or applicants to a religious order, who would live on the premises under the direction of a Mother Superior. The use of the premises is more fully described by the Bishop as follows:
"That the said small group of women, with the Mother Superior as the Head, would live in the home as a single family and as a single housekeeping unit, and that in religious terminology, as well as under the definitions contained in the said Zoning Ordinance, it constituted one family. Further, in no sense of the word would the property be used as a boarding house, lodging house or hotel, nor would it be used as a school for either the novices or the public; nor would it be used as a public place of worship. Should any of the novices require schooling, they would attend one of the educational institutions in the area and return to the said home at the end of each class day. The only noticeable difference between this family and any other family would be that the novices would wear a religious habit or garb."
The City denied his requested use of the property because it was zoned as a single family residence, in an RC "Estate District."
In its answer to the complaint for declaratory decree filed by the Bishop, the City admitted that it had advised him that "regardless of the wording of the zoning ordinance, the word `family' was to be construed in accordance with the meaning commonly ascribed to it by the public in general."
The chancellor, in his final decree, found that the requested use of the property violated the spirit and intent of the ordinance and restricted the use of the property to a single family residential purpose. The Bishop has appealed from this final decree.
The question before us is not what the word "family" means in common parlance, but what the City of Miami Beach zoning ordinance says it means. We are bound by the definition ascribed to the word in the ordinance. See Richard Bertram & Co. v. Green, Fla.App. 1961, 132 So.2d 24.
Under the terms of the ordinance any number of persons occupying the premises and living as a single housekeeping unit are entitled to the status of a family. There is no requirement that they be related by consanguinity or affinity.
*645 In 35 C.J.S. Family, at p. 936, it is noted that:
* * * * * *
"While the word `family' may be said to have a well defined, broad, and comprehensive meaning in general, it is one of great flexibility and is capable of many different meanings according to the connection in which it is used, its meaning not being sufficiently certain or defined to permit its use as descriptive of particular persons for some purposes, although for other purposes the term is not considered to be so indefinite."
* * * * * *
The court, in Missionaries of Our Lady of La Salette v. Village of Whitefish Bay, 267 Wis. 609, 66 N.W.2d 627 (1954), said:
* * * * * *
"For the purposes of its zoning code the legislative body of Whitefish Bay has in precise language defined the term `family.' It declares that a family is one or more individuals living, sleeping, cooking or eating on premises as a single housekeeping unit. Had it been the pleasure of the legislative body when defining the word `family,' to have excluded in the district any dwelling use of premises there situated, by a group of individuals not related to one another by blood or marriage, it might have done so. Since there is complete absence of any such limitation, it seems clear that it was not the legislative intent to restrict the use and occupancy to members of a single family related within degrees of consanguinity or affinity.
"It is to be noted that aside from the definition of the term `family' in the ordinance, the ordinary concept of that term does not necessarily imply only a group bound by ties of relationship."
* * * * * *
See also Boston-Edison Protective Assn. v. Paulist Fathers, 306 Mich. 253, 10 N.W.2d 847, 148 A.L.R. 364 (1943); Robertson v. Western Baptist Hospital, 267 S.W.2d 395 (Ky. Ct. App. 1954); Application of LaPorte, 2 A.D.2d 710, 152 N.Y.S.2d 916 (1956); Hunter Tract Imp. Co. v. Corp. of Catholic Bishop, 98 Wash. 112, 167 P. 100, L.R.A. 1918A, 297 (1917); Scott Co. v. Roman Catholic Archbishop, Diocese of Oregon, 83 Or. 97, 163 P. 88 (1917).
It is our opinion that the City is bound by the express terms of its own ordinance in defining a "family" and that the word "family" cannot be construed thereunder in accordance with the meaning commonly ascribed to it by the public in general.
If the City desires a different meaning for its ordinance in the future, it may amend, modify, or change the same by legislative process.
This appeal also involved certain procedural aspects which both parties now agree have no bearing on the final determination of the case.
Accordingly, the decision of the chancellor is reversed and remanded with directions for the entry of a final declaratory decree in accordance herewith.
It is so ordered.
PEARSON, Judge (dissenting).
I believe that the majority has defeated the legislative intent of the ordinance. The majority does not discuss the intent of the ordinance because they conclude that they are precluded from doing so by the definition of "family" included in the ordinance. I differ with them on this conclusion.
The applicable provision of the City's Zoning Ordinance is as follows:
"SECTION 3 USE REGULATIONS ESTATE DISTRICTS
In the `RAA', `RA', `RB' and `RC' Estate Districts no building or land shall be used and no building shall hereafter be erected, constructed, reconstructed or structurally altered which is designed, *646 arranged or intended to be occupied or used for any purpose other than a single-family residence, together with its accessory buildings * * *"
The ordinance further provides that a "family" is defined as:
"FAMILY: One or more persons occupying premises and living as a single housekeeping unit, as distinguished from a group occupying a boarding house, a lodging house or hotel, as herein defined."
In interpreting these provisions of the ordinance the trial judge held:
"* * * the Plaintiff, attempting to assert his rights under the zoning ordinances of Miami Beach, must admit the legality and validity of that ordinance, which restricts the use of the Plaintiff's property to that of a single family residence, and it further appearing that the use to which the Plaintiff proposes to put the property is not that of a single family residence, and that such use is clearly contrary to and in violation of the spirit and intent of the zoning ordinance, and this Court being otherwise fully advised in the premises, it is hereby * * *."
I think this holding is both reasonable and proper.
A strikingly similar case on the facts is Cassidy v. Triebel, 1948, 337 Ill. App. 117, 85 N.E.2d 461. Although before that court upon an appeal from a temporary injunction, the court dealt with a definition of a family by a zoning ordinance. The definition is in the same words as that now before us.[1] The use sought in the family district was, like ours, for a group of young ladies:
"* * * plaintiffs agreed to obtain a clarification of the ordinance in the nature of a variance so that it would expressly permit the use of said property as a residence by young lady students, who were members of the local chapter of Gamma Phi Beta Corporation, that after the sorority obtains title to said premises it will be used to provide a residence for approximately ten young lady students, supervised by a House Mother, who will have their meals prepared and served there and said dwelling will be the home of said students during the school year and said students will reside therein as a single housekeeping unit of one family. * * *"
The court held that while it is true that the members of a college sorority or fraternity are bound together by enduring fraternal ties, they are not members of a family in the sense that term is used in the ordinance under consideration.
The holding here that the ordinance definition of a family as "one or more persons occupying premises and living as a single housekeeping unit" forces the inclusion of all groups not expressly excluded, and overlooks the words "as distinguished from" in the definition.
The rules of construction, applied in the interpretation of statutes enacted by the legislature, are employed in the construction of municipal ordinances. The cardinal rule for statutory construction is that courts must seek out and determine legislative intent, and no literal interpretation should be given that leads to an unreasonable conclusion or to a purpose not intended by lawmakers. State ex rel. Hughes v. Wentworth, 135 Fla. 565, 185 So. 357, 360 (1938); Maryland Casualty Company v. Marshall, Fla.App. 1958, 106 So.2d 212.
I would hold that the legislative intent was to exclude institutions housing a large aggregate of persons, for whatever purpose, fraternal, religious or for profit.
NOTES
[1] The Peoria Zoning Ordinance defines a family as "one or more persons occupying a premises and living as a single housekeeping unit, as distinguished from a group occupying a boarding house, lodging house, or hotel, as herein defined."