STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. DENNIS BAKER, DEFENDANT-RESPONDENT.

Argued April 3, 1979—Decided July 30, 1979.

100

*Mr. David H. Rothberg* argued the cause for appellant (*Messrs. Sachar, Bernstein, Rothberg, Sikora & Mongello*, attorneys).

*Mr. Michael B. Blacker* argued the cause for respondent.

*Mr. Carl S. Bisgaier*, Director, Division of Public Interest Advocacy, argued the cause for *amicus curiae* Public Advocate of New Jersey (*Mr. Stanley C. Van Ness*, Public Advocate, attorney; *Mr. Bisgaier* and *Ms. Linda R. Hurd*, Assistant Deputy Public Advocate, on the brief).

A brief was submitted on behalf of *amicus curiae* Borough of Somerville (*Mr. Thomas H. Dilts*, attorney).

The opinion of the court was delivered by

PASHMAN, J.

█ The issue presented by this appeal is whether a municipality may utilize criteria based upon biological or legal relationships in order to limit the types of groups that may live within its borders. Specifically, we must determine the validity of § 17:3–1(a)(17) of the Plainfield Zoning Ordinance which seeks to preserve the "family" character of the municipality's neighborhoods by prohibiting more than four unrelated individuals from sharing a single housing unit. For the reasons to be given below, we conclude that although the goal sought to be furthered by that provision is entirely legitimate, the means chosen do not bear a substantial relationship to the effectuation of that goal. Hence, the regulation violates *N.J.Const.* (1947) Art. I, par. 1 and Art. IV, § 6, par. 2, and cannot stand.

Defendant Dennis Baker is the owner of a house located at 715 Sheridan Avenue, Plainfield. This dwelling is situated in a zone restricted to single family use. On three separate occasions during the fall of 1976 defendant was charged with allowing more than one family to reside in his home in violation of section 17:11–2 of the Plainfield Zoning Ordinance. "Family" is defined in the ordinance as:

One (1) or more persons occupying a dwelling unit as a single non-profit housekeeping unit. More than four (4) persons * * * not related by blood, marriage, or adoption shall not be considered to constitute a family. [City of Plainfield Zoning Ordinance § 17:3–1(a)(17)]

A trial as to all three charges was held in Plainfield Municipal Court. The evidence presented indicated that the home was generally shared by nine individuals: Mr. and Mrs. Baker, their three daughters, Mrs. Conata and her three children. Several other persons also apparently resided within the household for indeterminate periods of time.

The Bakers and Conatas lived together in what defendant termed an "extended family." The two groups view each other as part of one large family and have no desire to reside in separate homes. Defendant, an ordained minister of the Presbyterian Church, testified that the living arrangement arose out of the individuals' religious beliefs and resultant desire to go through life as "brothers and sisters." The Bakers and Conatas ate together, shared common areas and held communal prayer sessions. Each occupant contributed a fixed amount per week to defray household expenses.

Defendant was found guilty of all three charges and fines were imposed. After a trial *de novo* in the Union County Court—based upon the Municipal Court transcript, *see R.* 3:23–8(a)—defendant was again found in violation of the ordinance. The County Court judge concluded that defendant's religious beliefs regarding his lifestyle were sincere and that the household resembled a traditional extended family, thus constituting a "single non-profit housekeeping unit" within the meaning of the zoning ordinance. Nevertheless, he found both that the living arrangement of the Bakers and Conatas violated the numerical restriction of § 17:3–1(a)(17) and that the provision was a valid exercise of the municipality's police powers. Accordingly, he imposed the same penalties as had the Municipal Court. He ordered, however, that the fines for the first and third violations be suspended.

Defendant filed a notice of appeal to the Appellate Division. *State v. Baker*, 158 *N.J.Super.* 536 (App.Div.1978). The appellate judges concluded that "the Plainfield ordinance * * * 'so narrowly delimits the persons who may occupy a single family dwelling as to prohibit numerous potential occupants who pose no threat to the style of family living sought to be preserved[.]' " *Id.* at 541 (quoting from *Berger v. State*, 71 *N.J.* 206, 224 (1976)). Consequently, they held the ordinance invalid insofar as it classified permissible uses according to occupants' biological or legal relationships. The judges also ruled, however, that the "single non-profit housekeeping unit" criterion used in the ordinance was valid. After concluding that the County Court's finding that the Baker household constituted such a unit "could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole * * *," 158 *N.J.Super.* at 540, they reversed defendant's convictions and vacated the fines.

We granted the State's petition for certification. 77 *N.J.* 508 (1978). The Public Advocate was permitted to appear as *amicus curiae*. We now affirm.

I

A municipality's zoning power, although broad, is not without limits. In order to be valid, a zoning regulation must both represent a reasonable exercise of the police power and bear a real and substantial relation to a legitimate municipal goal. Moreover, the regulation may "not exceed the public need or substantially affect uses which do not partake of the offensive character of those which cause the problem sought to be ameliorated." *Kirsch Holding Co. v. Borough of Manasquan*, 59 *N.J.* 241, 251 (1971). *See, e. g., Pascack Ass'n, Ltd. v. Mayor & Coun. of Washington Tp.*, 74 *N.J.* 470, 483 (1977); *Berger v. State*, 71 *N.J.* 206, 223–224 (1976); *J.D. Construction Corp. v. Board of Adj. of Freehold Tp.*, 119 *N.J.Super.* 140, 145 (Law

Div.1972).  Under this test the numerical limitations of § 17:3–1(a)(17) must fall.

We have no quarrel with the legitimacy of Plainfield's goal.  Local governments are free to designate certain areas as exclusively residential and may act to preserve a family style of living.  *See Berger v. State, supra,* 71 *N.J.* at 223; *Collins v. Board of Adj. of Margate City,* 3 *N.J.* 200, 208 (1949); *Village of Belle Terre v. Boraas,* 416 *U.S.* 1, 94 *S.Ct.* 1536, 39 *L.Ed.2d* 797 (1974).  A municipality is validly concerned with maintaining the stability and permanence generally associated with single family occupancy and preventing uses resembling boarding houses or other institutional living arrangements.  *See Berger v. State, supra,* 71 *N.J.* at 225.  Moreover, a municipality has a strong interest in regulating the intensity of land use so as to minimize congestion and overcrowding.  As we stated in *Berger,* a municipality may endeavor in every legitimate way to "secure and maintain 'the blessings of quiet seclusion' and to make available to its inhabitants the refreshment of repose and the tranquillity of solitude."  71 *N.J.* at 223.

Nevertheless, the power to attain these goals is not without limits.  A municipality may not, for example, zone so as to exclude from its borders the poor or other unwanted minorities.  *See, e. g., Oakwood at Madison, Inc. v. Township of Madison,* 72 *N.J.* 481 (1977); *So. Burlington Cty. NAACP v. Tp. of Mt. Laurel,* 67 *N.J.* 151, *cert.* den. and app. dism., 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.2d* 28 (1975).  Nor may zoning be used as a tool to regulate the internal composition of housekeeping units.  *Taxpayer's Ass'n of Weymouth Tp. v. Weymouth Tp.,* 80 *N.J.* 6, 33 (1976), *cert.* den. and app. dism., 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.2d* 373 (1977).  *See, e. g., Kirsch Holding Co. v. Borough of Manasquan, supra; City of White Plains v. Ferraioli,* 34 *N.Y.2d* 300, 357 *N.Y.S.2d* 449, 313 *N.E.2d* 756 (Ct.App.1974).  A municipality must draw a careful balance between preserving family life and prohibiting social diversity.

■ The fatal flaw in attempting to maintain a stable residential neighborhood through the use of criteria based upon biological or legal relationships is that such classifications operate to prohibit a plethora of uses which pose no threat to the accomplishment of the end sought to be achieved. Moreover, such a classification system legitimizes many uses which defeat that goal. Plainfield's ordinance, for example, would prohibit a group of five unrelated "widows, widowers, older spinsters or bachelors—or even of judges" from residing in a single unit within the municipality. *Kirsch Holding Co. v. Borough of Manasquan, supra,* 59 *N.J.* at 248. On the other hand, a group consisting of 10 distant cousins could so reside without violating the ordinance.[1] Thus the ordinance distinguishes between acceptable and prohibited uses on grounds which may, in many cases, have no rational relationship to the problem sought to be ameliorated.

Regulations based upon biological traits or legal relationships necessarily reflect generalized assumptions about the stability and social desirability of households comprised of unrelated individuals—assumptions which in many cases do not reflect the real world. Justice Schaefer, writing for the Supreme Court of Illinois, has noted that

> a group of persons bound together only by their common desire to operate a single housekeeping unit, might be thought to have a transient quality that

---

[1] These examples are not, as our dissenting colleagues contend, intended to suggest the possibility of "invasions by swarms of country cousins." See *post* at 124. Rather, they are set forth merely to demonstrate that the distinctions utilized by the ordinance are not closely related to the municipality's valid concerns. Although some arbitrariness in line-drawing may be countenanced when necessary to achieve a legitimate goal, it is not to be tolerated where, as here, more precise methods of reaching the desired end are available. *See, e. g., Pascack Ass'n Ltd., supra,* 74 *N.J.* at 483; *Berger v. State, supra,* 71 *N.J.* at 223–224; *Kirsch Holding Co., supra,* 59 *N.J.* at 251.

> would affect adversely the stability of the neighborhood, * * * And it might be considered that a group of unrelated persons would be more likely to generate traffic and parking problems than would an equal number of related persons.
>
> *But none of these observations reflects a universal truth.* Family groups are mobile today, and not all family units are internally stable and well-disciplined. Family groups with two or more cars are not unfamiliar. [*City of Des Plaines v. Trottner,* 34 Ill.2d 432, 437, 216 *N.E.2d* 116, 119 (Sup.Ct.1966) (emphasis supplied)]

Accordingly, that court held a municipality without power to adopt a zoning ordinance which would "penetrate so deeply * * into the internal composition of a single housekeeping unit." [2] *Id.* at 120.

Nevertheless, despite the inexactitude and overinclusiveness of such regulations, we would be reluctant to condemn them in the absence of less restrictive alternatives. Such options do, however, exist.

■ The courts of this and other states have often noted that the core concept underlying single family living is not biological or legal relationship but, rather, its character as a single housekeeping unit. *Berger v. State, supra,* 71 *N.J.* at 227. *See Kirsch Holding Co. v. Borough of Manasquan, supra,* 59 *N.J.* at 250; *City of Des Plaines v. Trottner, supra; Boston-Edison Protective Ass'n v. Paulist Fathers,* 306 *Mich.* 253, 10 *N.W.*2d 847 (Sup.Ct. 1943); *City of White Plains v. Ferraioli,* 34 *N.Y.*2d 300, 305–307, 357 *N.Y.S.*2d 449, 452–454, 313 *N.E.*2d 756, 758–759 (Ct.App. 1974). As long as a group bears the "generic character of a family unit as a relatively permanent household," it should be equally as entitled to occupy a single family dwelling as its

---

[2] The dissent notes that *Des Plaines* has in fact been superseded by statute. It is cited here, however, not for its result but rather for its reasoning which, in our view, remains as valid today as when it was written. *See Kirsch Holding Co., supra,* 59 *N.J.* at 249–250 (citing *Des Plaines* with approval).

biologically related neighbors. *City of White Plains, supra,* 34 *N.Y.2d* at 306, 357 *N.Y.S.2d* at 453, 313 *N.E.2d* at 758; *see, e. g., Brady v. Superior Ct.,* 200 *Cal.App.2d* 69, 19 *Cal.Rptr.* 242 (Dist.Ct.App.1962); *Oliver v. Zoning Comm'n of Chester,* 31 *Conn.Sup.* 197, 326 *A.2d* 841 (C.P. Middlesex Cty.1974); *Carroll v. City of Miami Beach,* 198 *So.2d* 643 (Fla.Dist.Ct.App.1967); *Group House of Port Washington, Inc. v. Board of Zoning,* 45 *N.Y.2d* 266, 408 *N.Y.S.2d* 377, 380 *N.E.2d* 207 (Ct.App.1978); *Little Neck Comm. Ass'n v. Working Org. for Retarded Children,* 52 *A.D.2d* 90, 383 *N.Y.S.2d* 364 (App.Div.1976); *Missionaries of Our Lady of La Salette v. Village of Whitefish Bay,* 267 *Wis.* 609, 66 *N.W.2d* 627 (Sup.Ct.1954).

■ Plainfield has a legitimate interest in preserving a "family" style of living in certain residential neighborhoods. Such a goal may be achieved, perhaps more sensibly, by the single-housekeeping unit requirement, as well as the exclusion of incompatible residential uses such as commercial residences, non-familial institutional uses, boarding homes and other such occupancies without infringing unnecessarily upon the freedom and privacy of unrelated individuals.[3] *See Berger v. State, supra; Gabe Collins Realty, Inc. v. City of Margate City,* 112 *N.J.Super.* 341, 350 (App.Div.1970).

■ In addition to preserving a "family" style of living, the municipality also defends its ordinance as necessary to prevent

---

[3] The dissent suggests that today's opinion will allow multi-family occupancy in single family homes. See *post* at 115–116. This ignores the fact that municipalities are empowered to restrict residences to groups which actually constitute *bona fide* single-housekeeping units—the true criterion of single residence dwellings. *Berger v. State, supra,* 71 *N.J.* at 227. Municipal officials remain free to define in a reasonable manner what constitutes such a unit. Moreover, space-related occupancy limitations, discussed *infra,* may be used to preclude the possibility of household groups of "unrestricted" size. Thus, only groups compatible with a residential area will benefit by today's opinion.

overcrowding and congestion. The instant regulation, however, is too tenuously related to these goals to justify its impingement upon the internal makeup of the housekeeping entity. The Plainfield Ordinance is both underinclusive and overinclusive. It is overinclusive because it prohibits single housekeeping units which may not, in fact, be overcrowded or cause congestion; it is underinclusive because it fails to prohibit certain housekeeping units—composed of related individuals—which do present such problems. Thus, for example, five unrelated retired gentlemen could not share a large eight bedroom estate situated upon five acres of land, whereas a large extended family including aunts, uncles and cousins, could share a small two bedroom apartment without violating this ordinance.

An appropriate method to prevent overcrowding and congestion was suggested by this Court in *Kirsch Holding Co. v. Borough of Manasquan,* supra. We there stated that

> [w]hen intensity of use, *i. e.,* overcrowding of dwelling units and facilities, [presents a problem] consideration might quite properly be given to zoning or housing code provisions, which would have to be of general application, *limiting the number of occupants in reasonable relation to available sleeping and bathroom facilities or requiring a minimum amount of habitable floor area per occupant.* [59 *N.J.* at 254 (emphasis supplied)]

*See Sente v. Mayor and Mun. Coun. of Clifton,* 66 *N.J.* 204 (1974).[4] Area or facility-related ordinances not only bear a much greater relation to the problem of overcrowding than do legal or biologically based classifications, they also do not impact upon the composition of the household. They thus constitute a more reasoned manner of protecting the public health.[5]

---

[4]We have, in fact, today reaffirmed the appropriateness of such restrictions as a solution to density-related problems. *Home Builders League of So. Jersey, Inc. v. Tp. of Berlin,* 81 *N.J.* 127 (1979).

[5]We note that Plainfield does in fact have a minimum space per occupant requirement, although the zoning officer who testified at trial did not know if the Baker household was in violation thereof.

Other legitimate municipal concerns can be dealt with similarly. Traffic congestion can appropriately be remedied by reasonable, evenhanded limitations upon the number of cars which may be maintained at a given residence. Moreover, area-related occupancy restrictions will, by decreasing density, tend by themselves to reduce traffic problems. Disruptive behavior—which, of course, is not limited to unrelated households—may properly be controlled through the use of the general police power. As we stated in *Kirsch v. Borough of Manasquan, supra* :

> Ordinarily obnoxious personal behavior can best be dealt with officially by vigorous and persistent enforcement of general police power ordinances and criminal statutes * * *. Zoning ordinances are not intended and cannot be expected to cure or prevent most anti-social conduct in dwelling situations. [59 *N.J.* at 253–254]

Restrictions based upon legal or biological relationships such as Plainfield's impact only remotely upon such problems and hence cannot withstand judicial scrutiny.

Plainfield, in attempting to justify its regulation, relies upon *Village of Belle Terre v. Boraas*, 416 *U.S.* 1, 94 *S.Ct.* 1536, 39 *L.Ed.*2d 797 (1974). In that case the United States Supreme Court upheld an ordinance which limited to two the number of unrelated individuals who could reside in a single-family dwelling. *Belle Terre* has been widely criticized by the commentators [6] and its rationale appears to have been undermined in part by the more recent case of *Moore v. City of E. Cleveland*, 431

---

[6] *See, e. g.*, Williams and Doughty, "Studies in Legal Realism: *Mount Laurel, Belle Terre and Berman*," 29 *Rutgers L.Rev.* 73, 76–82 (1975); Hartman, "*Village of Belle Terre v. Boraas*: Belle Terre is a Nice Place to Visit—But Only 'Families' May Live There," 8 *Urb.L.Ann.* 193 (1974); Note, "*Village of Belle Terre v. Boraas*: 'A Sanctuary for People,'" 9 *U.S.F.L.Rev.* 391 (1974).

■■■■■■■■■■■■■■■

*U.S.* 494, 97 *S.Ct.* 1932, 52 *L.Ed.*2d 531 (1977).[7]   In any event, *Belle Terre* is at most dispositive of any federal constitutional question here involved.   We, of course, remain free to interpret our constitution and statutes more stringently.   *See, e. g., Oakwood at Madison, Inc. v. Tp. of Madison, supra,* 72 *N.J.* at 495 n.3; *So. Burlington Cty. NAACP v. Tp. of Mt. Laurel, supra,* 67 *N.J.* at 174–175.   *See generally* Brennan, "State Constitutions and the Protection of Individual Rights," 90 *Harv.L.Rev.* 489 (1977).[8]   We find the reasoning of *Belle Terre* to be both unpersuasive and inconsistent with the results reached by this Court in *Kirsch Holding Co. v. Borough of Manasquan, supra,* and *Berger v. State, supra.*   Hence we do not choose to follow it.

The dissent contends that *Kirsch Holding Co., supra,* was undermined by *Belle Terre.*   Its conclusion in this regard is unsound.   First, the dissent rests upon the premise that the *Kirsch* holding was in fact based upon *federal* constitutional grounds.   That opinion, however, merely held that substantive due process was offended by the regulation at issue;  it did not specify whether the federal or state constitution was being invoked.   Inasmuch as our own constitution requires zoning ordinances to comport with due process, *see Mt. Laurel, supra,* there is no reason to believe that *Kirsch* was not predicated

---

[7]*See, e. g.,* "Developments in the Law-Zoning," 91 *Harv.L.Rev.* 1427, 1568–1574 (1978); "*Moore v. City of East Cleveland, Ohio*: The Emergence of the Right of Family Choice in Zoning," 5 *Pepperdine L.Rev.* 547 (1978).

[8]As Justice Brennan aptly remarked, "state courts cannot rest when they have afforded their citizens the full protections of the federal Constitution. State Constitutions, too, are a font of individual liberties, their protections often extending beyond those required by the [United States] Supreme Court's interpretation of federal law." *Id.* at 491.  Constitutional decisions by federal courts, he declared, should only be considered as "guideposts" in interpreting state constitutional provisions "if they are found to be logically persuasive and well-reasoned, paying due regard to precedent and the policies underlying specific constitutional guarantees  *  *  *.*"  *Id.* at 502.

upon both state *and* federal constitutional grounds. Further, *Berger v. State, supra,*[9] which is clearly incompatible with *Belle Terre,* was decided *after Belle Terre* was handed down. Moreover, *Berger* specifically endorsed the *Kirsch* reasoning, thereby indicating that it was only its federal aspect which was undermined by *Belle Terre*; its state constitutional holding remains unimpaired. In any event, the *Kirsch* analysis remains logically sound regardless of *Belle Terre,* and we today reaffirm our adherence to that position.

Finally, Plainfield asserts that its ordinance complies with this Court's opinion in *Berger v. State, supra.* In that case we stated, *in dictum,* that a municipality could validly "restrict single family dwellings to a reasonable number of persons who constitute a *bona fide* single housekeeping unit." 71 *N.J.* at 225. However, we there were dealing with an institutional use in a familial setting and spoke of "persons" rather than unrelated individuals. In light of today's discussion, we conclude that the use of the word "reasonable" was intended to imply space-related limitations. Thus, *Berger* merely legitimizes space-related restrictions of general application and, as such, is wholly consistent with our opinion today. *See Township of Washington v. Central Bergen Comm. Health Center, Inc.,* 156 *N.J.Super.* 388, 415 (Law Div.1978); *Holy Name Hospital v. Montroy,* 153 *N.J. Super.* 181 (Law Div.1977).

Accordingly, we hold that zoning regulations which attempt to limit residency based upon the number of unrelated individuals present in a single non-profit housekeeping unit cannot pass constitutional muster. Although we recognize that we are under a constitutional duty to construe municipal powers liberally, *see N.J.Const.* (1947), Art. IV, § 7, par. 11, municipali-

---

[9] The dissent chooses to characterize this aspect of the *Berger* opinion as *dictum.* Actually, it was a fully developed alternative holding.

ties cannot enact zoning ordinances which violate due process. *See, e. g., Pascack Ass'n Ltd. v. Mayor & Council of Washington Tp.*, 74 *N.J.* 470, 483 (1977); *Berger v. State*, 71 *N.J.* 206, 223–224 (1976); *N.J.Const.* (1947), Art. I, par. 1; Art. IV, § 6, par. 2.[10]

## II

Having concluded that Plainfield's numerical requirement is invalid, we must determine whether the Baker household fulfilled the remaining municipal criterion of a "single non-profit housekeeping unit." We conclude that the Baker-Conata alliance was of sufficient permanence so as to resemble a more traditional extended family. Thus, the County Court judge's finding that the Baker household constituted a "single non-profit housekeeping unit" within the intendment of § 17:3–1(a)(17) is adequately based on the record.

### Conclusion

Today we hold that municipalities may not condition residence upon the number of unrelated persons present within the household. Given the availability of less restrictive alternatives, such regulations are insufficiently related to the perceived social ills

---

[10]Article I, par. 1 of our Constitution ensures the natural and unalienable right of individuals to pursue and obtain safety and happiness. Encompassed within its strictures is the requirement of due process upon which today's analysis is based. In addition, we would be remiss if we did not note that the right of privacy is also included within the protection offered by that provision. *See, e. g., State v. Saunders*, 75 *N.J.* 200 (1977). Although this right is not absolute, it may be restricted only when necessary to promote a compelling government interest. Article IV, § 6, par. 2 expressly provides that the power to zone shall be deemed to be within the police power of the State. We have, however, interpreted that provision as mandating that zoning regulations reasonably promote the welfare of the public as a whole. *See So. Burlington Cty. NAACP v. Tp. of Mt. Laurel, supra.* These provisions, when read together, require that zoning restrictions be accomplished in the manner which least impacts upon the right of individuals to order their lives as they see fit. For the reasons contained herein, the Plainfield regulation fails this test. Thus, it violates the right of privacy and due process.

which they were intended to ameliorate. Although we do not doubt Plainfield's good faith, the means it chose to further its legitimate goals were overreaching in their scope and hence cannot be permitted to stand.

For the foregoing reasons, the judgment of the Appellate Division is affirmed.

MOUNTAIN, J., dissenting.

I write in dissent both to state the grounds of my disagreement with the decision reached by my colleagues and with the reasons offered in support of that holding, but also to indicate as clearly as I am able the great significance of this case to property and home owners throughout the State and indeed to the citizens of the State generally. Although there are a number of statements and declared points of view in the majority opinion to which I take exception, two aspects of the decision are of especial importance and deserve to be especially emphasized.

One of these is the result that this case will have upon the zoning fabric of this State. The second is What I take to be an unfortunate resort to the New Jersey Constitution as a basis of decision, thus taking from the people of this State certain important rights which they have hitherto enjoyed but may now no longer exercise.

Let me initially address the first of these points. The most immediately significant result of this decision is that it deprives homeowners whose properties are located in "one-family residence zones" or in other restricted residential areas of the protection they have hitherto enjoyed against the possibility that other dwellings in the same zone would be used for multifamily purposes or for occupancy by groups of unrelated individuals unrestricted as to size. As of this writing, except as noted below,[1] there is no homeowner in New Jersey who can say with

---

[1] Homeowners whose properties enjoy the benefits of restrictive covenants limiting the use of lands to single-family occupancy are still protected, by

any assurance that his next door neighbor's house, or that of his friend down the street, may not at any time and without warning, either be occupied by two or more families or by a group of unrelated persons indefinite in number. All of this may happen although the properties are located in a Triple-A Residential one-family zone. Furthermore, at this moment, such occupancies are perfectly legal and it is not at all clear that any effective relief can be had at the municipal level. What is clear, as will be discussed below, is that no effective relief at all is available at the State level—from our Legislature. More of this anon. This condition of things results from the majority decision handed down today.

The second of these two significant aspects of this case has to do with the manner in which the majority opinion interprets and deals with our State Constitution. That Constitution, adopted in 1947, contains the following provision:

> The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor. The powers of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law. [*N.J.Const., Art.* 4, *§* 7, ¶ 11]

Hitherto, in the course of our decisional law, this provision has been applied, again and again, in accordance with its terms, to afford a liberal interpretation of all constitutional provisions and of all statutes pertaining to municipalities. It applies with full force to zoning ordinances.

> Zoning ordinances are to receive a reasonable construction and application, and under the *Constitution of 1947, Art.* IV, *§* VII, *par.* 11, they are to be liberally construed in favor of the municipality. [*Place v. Bd. of Adjust. of Saddle River,* 42 *N.J.* 324, 328 (1964)]

---

virtue of these covenants, in respect of all properties coming within the neighborhood scheme—the area to which the covenants apply.

It is not especially important, however, to dwell upon the relationship of this constitutional provision to the zoning ordinance before us, because the Court's opinion really focuses—although without specific mention—upon our Zoning Enabling Act, *N.J.S.A.* 40:55D–62. Through by-passing any discussion of this statute and turning directly to the Constitution, the majority in effect eliminates all possibility of legislative cure. Thus the direct result of this decision is to deprive our State Legislature of the power to authorize municipalities to restrict home occupancy to single families. As far as I know, this restriction upon legislative power exists in no other state.

We should never forget that our Constitution is the voice of the people, in whom all sovereignty ultimately rests.

> [T]he Constitution derives its force, not from the Convention which framed it, but from the people who ratified it. [*Gangemi v. Berry*, 25 *N.J.* 1, 16 (1957)]

It is the people of this State who have declared that our Constitution and our statutes concerning municipalities are to receive a liberal construction. I leave it to the reader to decide whether this Court's decision today can be said to give due and proper weight to the admonition of the people set forth above. In making this assessment it is fair and germane to point out that, as I have said above, no other court in the land appears to have so shackled the hands of its lawgivers and furthermore that the rule of law laid down today was some years ago repudiated by the highest court in the land. *Village of Belle Terre v. Boraas*, 416 *U.S.* 1, 94 *S.Ct.* 1536, 39 *L.Ed.*2d 797 (1974).

The majority concludes that the Plainfield zoning ordinance prohibiting more than four unrelated individuals from sharing a single housing unit violates *Art.* I, *par.* 1 of the New Jersey Constitution. The clause reads as follows:

> All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and

liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness. [*N.J.Const., Art.* I, par. 1]

It may not be immediately apparent how this provision affects the issue before us and the majority opinion is silent and unenlightening. But we know from earlier case law that this provision has been interpreted to include both a "due process" and an "equal protection" clause similar to those found in the Federal Constitution. It is presumably upon one or both of these implied clauses that the majority relies.

This brings us to a highly significant point in our discussion. The majority, obviously intent upon achieving a foreordained result, could have reached the sought-for goal by finding that the section of the Plainfield ordinance before us, did not, as a matter of *statutory interpretation*, fulfill the requirements of the Zoning Enabling Act. In other words it could have held that the power to define "family" in the manner set forth in the ordinance went beyond the powers delegated to municipalities by the Legislature. The most pertinent portion of the Enabling Act says,

> The governing body [of a municipality] may adopt or amend a zoning ordinance relating to the nature and extent of the uses of land and of buildings and structures thereon. [*N.J.S.A.* 40:55D–62]

Given the applicable canons of liberal construction adverted to above, it might be thought difficult to read this comprehensive grant of power as forbidding what Plainfield has done. But it would certainly be no more difficult to discover in this language a prohibition against the Plainfield ordinance, than to extract a proscription against such municipal legislation from the vague phrases of *Art.* I, *par.* 1 quoted above. Of course the difficulty quite clearly arises from the fact that neither the Constitution *nor* the Enabling Act can sensibly be read to impose the prohibition. But let us move forward to examine with some care the

result which follows from the choice made by the majority to place its decision upon the Constitution rather than the statute.

What the Court has chosen to do is most unusual. Normally, where an issue of this sort arises, a court will rest its decision upon a statutory rather than a constitutional ground. It has been suggested that this rule is absolute and unyielding.[2] Had this course been followed here, the result would be very different than the end now achieved. Had the decision been reached as a matter of statutory interpretation, then the Legislature, had it seen fit to do so, could have amended the statute to provide expressly that municipalities should thenceforth have the power the Court had found not to have been previously granted. Now it is completely foreclosed from doing this because the Court has found there to be a *constitutional* violation. The Legislature cannot amend the Constitution.

A parallel experience in Illinois is instructive. In 1966 the Supreme Court of that state, in the case of *City of Des Plaines v. Trottner,* 34 *Ill.*2d 432, 216 *N.E.*2d 116 (1966) was required to rule upon the validity of a municipal ordinance very similar to the one before us here. The ordinance in the Illinois case defined a "family" as consisting of one or more persons each related to the other by blood, adoption or marriage together with their respective spouses. "Family" might also include domestic servants and one gratuitous guest. 216 *N.E.*2d at 117. The court determined that as a matter of statutory construction the ordinance was invalid because the zoning enabling act in Illinois had not delegated to municipalities the power to make such a classification.

---

[2][T]here is the sound, oft-expressed principle that constitutional questions should not be reached and resolved unless absolutely imperative in the disposition of the litigation. While the adjudicative process admits of few unyielding rules, this maxim comes as close as any to being an absolute. [citing authorities] [*State v. Saunders,* 75 *N.J.* 200, 229 (1977); (Clifford J., dissenting)]

In the following year, 1967, the Illinois Legislature adopted *Ill.Rev.Stat.*1967, *c.* 24, § 11–13–1(9), which reads as follows:

[T]he corporate authorities in each municipality have the following powers:

\*     \*     \*     \*     \*     \*     \*     \*

(9) to classify, to regulate and restrict the use of property on the basis of family relationship, which family relationship may be defined as one or more persons each related to the other by blood, marriage or adoption and maintaining a common household.

The difference between the way in which the common problem was handled in Illinois and the way in which it has been handled in New Jersey is striking. In Illinois, since the court decision was made to rest upon an issue of statutory interpretation, the people, acting through their Legislature, were readily able to alter a decision with which they disagreed, simply by enacting corrective legislation. In New Jersey, on the other hand, this Court has deprived the people of this opportunity. In the not unlikely event that there should be dissatisfaction with the majority opinion, correction can only be accomplished by either inducing this Court to reverse itself or by amending the Constitution. Neither course is simple or certain. This is what I have referred to above as "an unfortunate resort to the New Jersey Constitution." It is something I think the Court should not have done.

The same problem was presented to this Court in another very important zoning case decided some few years ago. I refer to *So. Burl. Cty., N.A.A.C.P. v. Tp. of Mt. Laurel,* 67 *N.J.* 151 (1975) (*Mt. Laurel*). There a conscious choice was made to rest the decision upon constitutional rather than upon statutory grounds. 67 *N.J.* at 174–75. Although I concurred in the Court's holding in that case, I disagreed with the other members of the Court upon this single point. I would have rested the decision upon statutory rather than upon constitutional grounds and wrote a

brief concurring opinion so stating. 67 *N.J.* at 193. I still believe that that view is correct.[3]

In a discussion of *Mt. Laurel,* a very able commentator had this to say about my concurring opinion:

> On this point [whether to rest the opinion upon constitutional or statutory grounds] one Justice (Mountain) concurred specially, on the ground that the decision should be based upon general welfare under the zoning enabling act . . . and therefore that a constitutional decision was unnecessary. This would have been an open invitation to the dominant suburban forces in the Legislature, to try to figure out a way to amend the enabling act in order to get around this decision; and so the majority wisely rejected it. [3 *Williams, American Land Planning Law,* § 66.13f, p. 33–34, 1978 *Cum.Supp.*]

But the whole point is that the legislators and the people whom they represent *should* have the right to the final word. This is what democracy is all about.

While the foregoing points are, in their impact upon the citizens of this State, the most important that emanate from this decision, there are other aspects of the majority opinion which should perhaps not go unnoticed.

One of these is its rather cavalier treatment of *Village of Belle Terre v. Boraas, supra,* a case decided by the United States Supreme Court in 1974. There the Court was called upon to examine an ordinance that restricted land use to one-family dwellings. The word "family" was defined as being one or more persons related by blood, marriage or adoption, as well as any two unrelated persons ". . . living and cooking together as a single housekeeping unit . . . ." 416 *U.S.* at 2, 94 *S.Ct.* at

---

[3] I would readily concede that there is a nobility of purpose both in the decision and in the opinion in *Mt. Laurel* that goes far to justify resort to the Constitution. I have suggested as much before. "The rule [laid down in *Mt. Laurel*] has an idealistic, even Utopian quality." *Oakwood at Madison, Inc. v. Township of Madison,* 72 *N.J.* 481, 624 (1977). It is all too obvious that no such quality is to be found in the case before us.

1537–38, 39 *L.Ed*.2d at 800. It will be seen that this ordinance is practically identical with the one before us, except that Plainfield permits twice as many unrelated persons—four rather than two—to occupy a dwelling. Speaking for seven members of the Court, Justice Douglas wrote an opinion sustaining the constitutionality of the ordinance in all respects. The argument was made, as it has been made here, that unrelated persons were improperly deprived of associational and other constitutional rights. It was pointed out, as has been done here, that whereas only two unrelated persons might occupy a one-family residence, any number of persons, if allied by blood, marriage or adoption, were free to associate together as a single housekeeping unit. It was urged that this constituted impermissible discrimination and violated the associational rights of unrelated persons. The Court's opinion completely rejected the argument. It formed the basis, however, of Justice Marshall's dissent.[4]

Why the majority rejects *Belle Terre* is not clear. It is said not to be persuasive, but we are not told why or wherein its inadequacies lies. All other state courts that have addressed this issue since *Belle Terre* was decided have chosen to follow it. *Rademan v. City of Denver*, 186 *Colo*. 250, 526 *P*.2d 1325 (1974); *Prospect Gardens Convalescent Home, Inc. v. City of Norwalk*, 32 *Conn.Supp*. 214, 347 *A*.2d 637 (1975); *Association for Educ. Dev. v. Hayward*, 533 *S.W*.2d 579 (Mo.1976). We may properly note

> . . . the tendency of state courts, following *Village of Belle Terre v. Boraas*, 416 *U.S.* 1, [94 *S.Ct.* 1536, 39 *L.Ed.2d* 797] (1974) . . . to reject the claims of groups of friends or other associates who have no special needs but merely wish to live together. [*Developments-Zoning*, 91 *Harv.L.Rev.* 1427, 1578 n. 77 (1978)]

But not in New Jersey.

---

[4] Justice Brennan wrote a separate dissent taking the position that under the facts presented to the Court the case was moot and therefore there was no pending "case or controversy." He recommended dismissal on this ground and hence did not reach the meritorious issue in the case.

The majority argues that Plainfield's definition of "family," as embracing only four unrelated persons while including nuclear families of any size, is both overinclusive and underinclusive. It points to the possibility of ten distant relatives assembling under one roof while five or more jurists or other similar groups are forbidden to cohabit together. The argument proceeds upon the oft-rejected premise that legislation that could have, but did not, exclude or include every person who might properly have been so classified is therefore invalid. Much the same argument was advanced before the Supreme Court in *Belle Terre*:

> It is said, however, that if two unmarried people can constitute a "family," there is no reason why three or four may not. But every line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial, function. [416 *U.S.* at 8, 94 *S.Ct.* at 1540, 39 *L.Ed.*2d at 803–4]

Justice Douglas went on to quote Justice Holmes' famous response to this kind of argument:

> When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark. *Louisville Gas Co. v. Coleman*, 277 *U.S.* 32, 41, 48 *S.Ct.* 423, 426, 72 *L.Ed.* 770 (dissenting opinion). [416 *U.S.* at 8 n. 5, 94 *S.Ct.* at 1540 n. 5, 39 *L.Ed.*2d at 804 n. 5]

Limiting occupancy to single families and to not more than four unrelated individuals, as has been done by the City of Plainfield, is in every sense fair and reasonable and should be sustained. The majority would be better employed in protecting the rights of homeowners—grievously threatened by this decision—rather than in conjuring up imaginary hobgoblins in the form of nonexistent invasions by swarms of country cousins.

Let me indicate more affirmatively why I believe the Plainfield ordinance should be sustained. Appellant takes the position, stated above, that if a family, composed of an indefinite number of persons, may legally occupy a "single-family" residence, then an indefinite number of unrelated persons should have the same right. The majority has agreed and in so doing has deplorably denigrated one of the greatest and finest of our institutions—the family. The family should be entitled—as until now it has been—to stand on its own in a distinctly *preferred* position. There is no support in our *mores* as there should be none in our law, to justify the elevation of any group of unrelated persons to a position of parity with a family. Justice Brennan, concurring, in *Moore v. East Cleveland*, 431 *U.S.* 494, 97 *S.Ct.* 1932, 52 *L.Ed.*2d 531 (1977), and quoting from the brief filed by the Village of Belle Terre in that earlier case, has expressed the point perhaps as well as it can be stated,

> Whether it be the extended family of a more leisurely age or the nuclear family of today the role of the family in raising and training successive generations of the species makes it more important, we dare say, than any other social or legal institution. . . . *If any freedom not specifically mentioned in the Bill of Rights enjoys a 'preferred position in the law it is most certainly the family.* [431 *U.S.* at 511, 97 *S.Ct.* at 1492, 52 *L.Ed.*2d at 545; emphasis that of Justice Brennan)]

Similarly the plurality opinion of Justice Powell in the same case drew a sharp line between judicial solicitude for the family as an institution and its attitude toward unrelated groups. · It should be stated that the ordinance in *East Cleveland* defined "family" in such a way that a grandmother could not maintain a common household with two grandchildren who were cousins, although she could have done so had they been brothers. The City of East Cleveland relied on *Belle Terre* to sustain its position. Justice Powell disagreed:

. . . [O]ne overriding factor sets this case apart from *Belle Terre.* The ordinance there affected only *unrelated* individuals. It expressly allowed all who were related by "blood, adoption or marriage" to live together, and in sustaining the ordinance we were careful to note that it promoted "family needs" and "family values." 416 *U.S.* at 9 [94 *S.Ct.* 1536, 39 *L.Ed.*2d 797]. East Cleveland, in contrast, has chosen to regulate the occupancy of its housing by slicing deeply into the family itself. [431 *U.S.* at 498, 97 *S.Ct.* at 1935, 52 *L.Ed.*2d at 537]

Prior decisional law in this State is not especially helpful. *Kirsch Holding Co. v. Borough of Manasquan,* 59 *N.J.* 241 (1971) dealt only with summer rentals, which perhaps should be thought of as a special problem. Furthermore its present status is ambivalent. In *Taxpayers Association of Weymouth Tp. v. Weymouth Tp.,* 80 *N.J.* 6 (1976), Justice Pashman, speaking for a unanimous court, said,

*Kirsch* was decided on constitutional grounds and may, to that extent, have been undermined by the subsequent decision in *Belle Terre v. Boraas, supra,* 416 *U.S.* 1, 94 *S.Ct.* 1536, 39 *L.Ed.*2d 797, upholding a similar ordinance. [80 *N.J.* at 33]

This is clearly so, although the majority opinion seems uncertain.

Most recently, in 1976, this Court decided *Berger v. State,* 71 *N.J.* 206. There the maintenance of a group home, owned by the State, for multi-handicapped pre-school children was attacked as being violative of certain restrictive covenants in the chain of title of the land on which the school was located, as well as being in violation of provisions in the local zoning ordinance. We held that the covenants were not violated and that, as a state agency, the group home was immune from the provisions of the local zoning ordinance. We went on to say, by way of *dictum,* that a zoning ordinance setting apart a one-family residential zone, and defining "family" as being only those persons related by blood, marriage or adoption was unduly restrictive; that it did not fairly take account of the legitimate

rights and needs of unrelated persons. We also suggested that this need might be met by limiting to a reasonable number those unrelated persons who might choose to live together as a bona fide housekeeping unit. 71 *N.J.* at 225. The same suggestion had indeed been earlier made by Judge Conford in *Gabe Collins Realty, Inc. v. City of Margate City*, 112 *N.J.Super.* 341, 350 (App.Div. 1970). It seems to me that the City of Plainfield has done its best to follow this suggestion.

The majority opinion also finds that the Plainfield ordinance violates *Art.* IV, *§* 6, ¶ 2, although it does not inform the reader what this is nor is any reasoned elaboration set forth to support the holding. This constitutional provision in fact reads as follows:

> The Legislature may enact general laws under which municipalities, other than counties, may adopt zoning ordinances limiting and restricting to specified districts and regulating therein, buildings and structures, according to their construction, and the nature and extent of their use, and the nature and extent of the uses of land, and the exercise of such authority shall be deemed to be within the police power of the State. Such laws shall be subject to repeal or alteration by the Legislature. [*N.J.Const., Art.* 4, *§* 6, ¶ 2]

I leave the reader to speculate—as does the majority—as to how the ordinance before us offends this broad confirmation of legislative zoning power or in fact how the issue is even reached.

For all of the reasons set forth above, I respectfully dissent and would reverse the judgment of the Appellate Division and declare valid the ordinance in question.

Chief Justice HUGHES joins this opinion.

*For affirmance*—Justices PASHMAN, CLIFFORD, SCHREIBER and HANDLER and Judge HALPERN—5.

*For reversal*—Chief Justice HUGHES and Justice MOUNTAIN—2.